John W. Tully, Appellant, *v.* Samuel K. Felton, Conrad F. Rau and Edward A. Sibley, Copartners, trading as Felton, Rau & Sibley.

[Marked to be reported.]

*Contract—Accounts—Laches—Statute of limitations—Equity.*

Plaintiff, the owner of a patent paint filler, entered into an agreement in writing with defendants by which the latter were to manufacture the paint filler in accordance with instructions given by the plaintiff. Defendants were to furnish all the capital necessary to carry on the manufacture. The agreement provided " that all the net profits arising from the direct sales of said patent paint filler made by said party of the second part, or by their traveling salesmen shall accrue to the benefit and advantage of the said party of the first part in the same proportion as though sold directly by the said party of the first part." By another clause of the contract it was stipulated that the plaintiff should give to the defendants " one third of the net profits arising from the entire sale of the paint filler." The sales were made by the defendants. It was also provided " the cost of manufacture to be estimated by the wholesale price of the materials and packages used, and the amount of labor bestowed in its manufacture." The parties acted under the contract for sixteen years, and semiannual accounts were furnished to plaintiff, which he accepted without objection. The cost of manufacture was arrived at by ascertaining the value of the materials used by the prices received for the same from wholesale customers to whom defendants sold, estimating the labor required in the preparation of the product as compared with the whole of the product belonging to the joint account and adding the cost of packages, but no detailed accounts of the materials and labor were kept. In the sixteenth year a controversy arose as to the meaning of the word " wholesale," and the plaintiff, after learning that the defendants had charged him an advance on the price of different materials purchased from others, demanded a detailed account for the previous year of the cost of manufacture. He received two statements of account which were unsatisfactory. He also received two semiannual statements. After these four statements were made plaintiff filed his bill. *Held,* (1) that the plaintiff had such a direct interest in the subject of the cost of manufacture that he was entitled to have full and accurate accounts kept of the cost of manufacture; (2) that the contract did not contemplate that the cost of materials and labor was to be merely a matter of estimate without any reference to the actual cost; (3) that the plaintiff had a standing in equity to demand a full accounting for the whole period during which the contract ran; (4) that under the circumstances of the case the plaintiff was not barred by his own laches or the statute of limitations; (5) that the last four statements submitted to him did not constitute an account stated by which the

plaintiff was bound so that the account could not be opened; (6) that in a proper accounting defendants should be allowed a credit for materials furnished, not at the wholesale selling price of such materials as established by their sales to others, but at the usual wholesale selling price of said materials in the market at the time of furnishing the same, and they should be allowed a credit only for the actual cost of the labor furnished and done by them.

Argued April 8, 1896.   Appeal, No. 143, Jan. T., 1896, by plaintiff, from decree of C. P. No. 1, Phila. Co., June T., 1888, No. 296, dismissing bill in equity.   Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ.   Reversed.

Bill in equity for an account.

The case was referred to D. Webster Dougherty, Esq., as master.

The plaintiff's ground for relief was based upon the following contract:

" This agreement, made the twenty-eighth day of February, Anno Domini one thousand eight hundred and seventy-one (1871), Between John W. Tully, of the City of Philadelphia, in the State of Pennsylvania, of the one part, and Samuel K. Felton, Conrad F. Rau and Edward A. Sibley, trading under the name and form of Felton, Rau & Sibley, of the City and State aforesaid, of the other part.

" Witnesseth, That the said party of the second part, in consideration of the covenants and agreements hereinafter contained, hereby covenant and agree to and with the said party of the first part, his heirs, executors, administrators and assigns, to be the sole manufacturers of the Article patented and sold as ' J. W. Tully's Patent Paint Filler,' the manufacturing to be done in accordance with instructions given by J. W. Tully, the Patentee; the cost of manufacturing to be estimated by the wholesale price of the materials and packages used and the amount of labor bestowed in its manufacture.   And the said parties of the second part further agree to furnish all the Capital necessary to carry on the manufacture of the said Paint Filler.   And the said party of the first part agrees to give to the said party of the second part, their respective heirs, executors, administrators, and assigns, one-third of the net profits arising from the entire sale of the Patent Paint Filler.   Also

agrees that in case he should dispose or sell a right or rights to make his Patent Paint Filler to any person or persons, that the said party of the second part shall be entitled to one-third of the amount received for the same. And it is further agreed that the traveling expenses of neither of the parties or their agents shall enter into the costs of the manufacture of said Patent Paint Filler. And it is further agreed that all the net profits arising from the direct sales of said Patent Paint Filler made by said party of the second part, or by their traveling salesman, shall accrue to the benefit and advantage of the said party of the first part, in the same proportion as though sold directly by the said party of the first part. And it is further agreed, that the said party of the second part shall have the exclusive right to manufacture the Patent Paint Filler for the period of one year from the date thereof, with the privilege of extending the time until the present Patent shall expire, on the said terms and conditions as hereinbefore agreed upon and set forth. And further, it is understood and agreed, all other inventions made by said Tully that relate to said Felton, Rau & Sibley are to be taken by them on the same conditions as the above. Also, that said party of the first part is to have the privilege of state rights upon returning one-third the net profits as above mentioned to said party of the second part, and the said J. W. Tully retains the general agency of the sales of all States of this Patent right. And for the true and faithful performance of all and singular the covenants and agreements herein contained, each of the said parties bindeth themselves unto the other, their respective heirs, executors, administrators and assigns firmly of these presents."

The master reported the facts to be as follows :

1. That on the 28th day of February, A. D. 1871, the plaintiff and defendants entered into a written agreement by which the defendants were to become the sole manufacturers of a certain paint invented and patented by the plaintiff known as the " J. W. Tully's Patent Paint Filler."

The defendants were to furnish all the capital necessary to carry on the manufacture of the Paint Filler, and were to receive in addition to the cost of manufacturing, which was to be

estimated by the wholesale price of the materials and packages used and the amount of labor bestowed in its manufacture, one third of the net profits arising from the entire sale of the "Patent Paint Filler."

Subsequently under the same agreement and under the same terms the defendants manufactured certain other paints invented by the plaintiff known as the "Belgium Hard Wood Filler," "The Iron Priming and Finishing Steel Color Paint," and "The Roman Hard Wood Filler."

In 1884 the terms of defendants' compensation were changed to the extent that they were to receive one-half instead of one-third of the profits from the sale of the Belgium and Roman Filler.

2. That under said contract the defendants manufactured and with the knowledge and consent of plaintiff, sold the different Tully paints from February 28, 1871, until February 8, 1887.

3. That no accounts of any kind were kept by the defendants of their transactions under the contract with the plaintiff, save an account of the quantity of the different paints manufactured and sold and the amount of money received therefor. At the end of every six months, the defendants made up a statement for the plaintiff, showing the quantity of the different materials sold during the preceding six months, and the cash received therefor. From the total amount so received by them from the sale of the paints, the defendants deducted as the costs of manufacture, a sum which Mr. Felton, one of the defendants, conscientiously believed was the price to be charged. This sum was not arrived at from any calculation based on an account of the exact amount of the material used in the manufacture and the cost thereof or the actual cost of the labor bestowed in the manufacture.

4. That the sum which Mr. Felton thought was the proper charge to be made for the cost of material, was based on the price at which the defendants sold the different materials used in the Tully paints when selling at wholesale, and not on the actual cost thereof to the defendants.

5. That the sum which the defendants charged for the cost of manufacturing the Tully paints was in excess of the actual cost to them both as respects materials and labor.

6. That many different materials entered into the composition of the different Tully paints, some of which were manu-

factured or imported by the defendants and some of which were purchased from the manufacturer or importer.

7. The defendants during the entire time the contract was in force were manufacturers, importers and dealers in all kinds of paints, etc. The plaintiff was a practical painter, but it does not appear that he ever manufactured paints of any kind until after or about the time the contract between the defendants and himself terminated, or that he knew up to that time what was the cost of manufacturing the different Tully paints.

8. That once in six months for fourteen years the plaintiff received from the defendants a statement showing the actual amount of Tully paints sold during the preceding six months and the amount of money received by them therefor, from which was deducted the cost of manufacture as ascertained by Mr. Felton. For the last two years the plaintiff received nothing from the defendants because of purchases by him from the defendants the cost of which was in excess of his share of the profits according to the price charged by the defendants for the cost of manufacture.

No objection of any kind was made by the plaintiff to the form of account rendered by the defendants to him until about the time of the termination of the contract, nor did the plaintiff until then ask for any other or different kind of account.

9. That plaintiff did not know until after the bill in this case was filed, that the defendants did not keep full and accurate accounts of their transactions with him under the contract, and until sometime in 1886 did not know that they charged an advance on the cost price to them, on the materials purchased by them, which were used in the Tully paints, and that the charge for labor in the manufacture of the paints was in excess of the actual cost.

10. That the mode adopted by the defendants in determining the amount to be charged for the cost of manufacturing the Tully paints was for the defendant Felton every six months to exercise his best judgment in determining what the cost really was, taking into consideration the quantity of Tully paints manufactured in the preceding six months.

11. That under the terms of the written agreement between plaintiff and defendants, the words "wholesale price" meant with respect to those goods purchased by the defendants from the manufacturer or importer and which were used in the Tully

paints, the cost price thereof to the defendants and not the price at which they were sold by them to others in the course of their regular business.

12. Plaintiff had no knowledge or information until sometime in the year 1886 of the fact that the defendants charged a profit on those materials used in the Tully paints which they purchased from others and had no knowledge or information which led him to believe there was an excessive charge for the labor employed in the manufacture of the Tully paints until sometime in the latter part of the year 1886.

Plaintiff did not know that defendants did not keep full and accurate accounts of their transactions under their contract with him until after the present suit was instituted.

13. There was no fraud on the part of the defendants in failing to keep accounts or in charging a profit on the cost of material used in the Tully paints which they purchased from others and in charging in labor for excess of the actual cost thereof.

14. That the loss to the plaintiff through the defendants' mistake amounts in the whole to a substantial sum, but the exact amount of which it is now possible to state.

15. That it was the duty of the defendants to keep full and accurate accounts of all their transactions under their contract with the plaintiff, showing the quantity of Tully paints manufactured and the amount received by them from the sale thereof, the quantity of each different material used in the Tully paints and the cost of each and the amount of labor bestowed in the manufacture of the paints with the cost thereof.

16. That on the 12th of January, 1887, the defendants delivered to plaintiff a statement of their dealings under the contract with him for the year 1886, as follows:

| | | |
|---|---|---|
| Merchandise . . . . . $3,488 68 | | |
| To John W. Tully, No. 1 account. . | | $3,488 68 |

Profits on sales of primers and fillers from January 1, 1886, to January 1, 1887:

| | | |
|---|---|---|
| 80,945 pounds priming and finishing paint, 5 cents . . . . . . . . | $ 4,047 | 25 |
| 2,123 gallons iron paint and scraping filters . | 2,165 | 46 |
| 8,526 pounds American filler, 2 cents . . | 170 | 52 |
| | $ 6,383 | 23 |

| | |
|---|---:|
| Sales of primer and iron paint scraping and American fillers . . . . . . . | $10,984 46 |
| Cost . . . . . . . . . | 6,383 23 |
| | $ 4,601 23 |
| Less Felton, Rau & Sibley, one-third profit . | 1,533 74 |
| | $ 3,067 49 |

| | | |
|---|---|---:|
| 4,614¾ pounds Belgium filler, bulk 2⅝c. . . | | $ 121 13 |
| 8½ " " " ½ gallon can 3⅕c. | | 27 |
| 1,305 " " " 1 pound can 4⅓c. . | | 58 72 |
| 592 " " " 2 pound can 4c. | | 23 68 |
| 63 " " " 3 gallon can 3¾c. . | | 2 39 |
| 16 " " " 4 gallon can 3⅝c. | | 58 |
| 1,020 " " " 5 gallon can 3⅗c. . | | 36 72 |
| 480 " " " 10 gallon can 3⅔c. | | 16 32 |
| 100 " " " 12½ gallon can·3¼c.. | | 3 25 |
| 750 " " " 15 gallon can 3¼c. | | 24 38 |
| 2,425 " " " 25 pound can 3₆³₀c.. | | 80 02 |
| 11,374¼ " " " . . . . | | 367 46 |
| 2,160 pounds Roman filler, 1¾c. . . . | | 37 80 |
| | | $ 405 26 |
| Sales of Belgium and Roman fillers . . . | | $ 1,247 64 |
| Cost of Belgium and Roman fillers . . . | | 405 26 |
| | | $ 842 38 |
| Less Felton, Rau & Sibley, one-half profit . . | | 421 19 |
| | | $ 421 19 |

| | |
|---|---:|
| Profits on primer and iron paint scraping and American fillers . . . . . . . | $ 3,067 49 |
| Profit on Belgium and Roman fillers . . | 421 19 |
| | $ 3,488 68 |

E. & O. E.

With said statement the defendants sent a letter to plaintiff, as follows:

"January 12, 1887.

"Mr. J. W. Tully,

"1901 Callowhill Street, Philada., Pa.

"Dear Sir:—Enclosed we hand you statement of account,

showing the quantity of filler and priming and finishing paint sold during the year 1886, together with cost of same, etc. The books are open for your examination. The premium on the policy of life insurance for Four thousand Dollars which you assigned to us as security, will be due on the 16th instant.

"We propose to renew it for Fourteen hundred Dollars only if you wish to carry the balance on Twenty-five hundred Dollars for your own benefit you can take out a separate policy accordingly. If you desire to do this it will be necessary for you to call at the life insurance office, N. W. Cor. Tenth and Chestnut Streets, on or before the 16th instant.

"Respectfully yours,
"FELTON, RAU AND SIBLEY"

17. That on the 15th of July, 1887, the defendants delivered to the plaintiff a statement of their dealings under their contract with him from January 1, 1881, to February 1, 1887, as follows :

Folio 119.

MONTHLY STATEMENT.

PHILADELPHIA, February 8, 1887.

MR. JOHN W. TULLY,
　　To FELTON, RAU AND SIBLEY, DR.
136, 138 and 140 North Fourth Street, Cor. Cherry.

| | |
|---|---|
| No. 1, account to Mdse. . . . . . | $2,389 84 |
| No. 2, " " . . . . . | 13 83 |
| | $2,403 67 |

CR.

| | | |
|---|---|---|
| Feb. 8th. By Mdse. . . . . (Profits on primers and fillers to 8th inst. inclusive.) | $436 22 | |
| Feb. 8th. By Mdse. . . . . (Clerical error of ¼c. on 84,334 pounds primer in settlement of 12/31/81 and 6/30/82.) | 210 84 | |
| Feb. 8th. By interest. . . . . | 60 95—$ 708 01 | |
| Interest on the above item of $210.84 Balance due Felton, Rau & Sibley. | | $1,605 66 |

18. That plaintiff did not accept the accounts handed on January 12, 1887, for one year, 1886, and July 15, 1887, for the period of time from January 1, 1887, to February 8, as true and correct, nor was there anything in his conduct from which the said accounts could be considered as accounts stated.

19. That sometime in the year 1886, the plaintiff requested permission from the defendants for an accountant to examine in the plaintiff's behalf the books of the defendants containing the accounts relative to their transactions under the contract with plaintiff, and defendants declined to accede to his request.

20. The plaintiff was known to the defendants as an uneducated man and incapable of examining and passing upon the correctness and truth of the accounts.

21. That no final settlement of account between plaintiff and defendant with respect to their transactions under the contract was ever made, although from time to time during the continuance of the contract the plaintiff gave receipt in full to the defendants for such sums as might then be due him as per the statement then handed to him.

The master recommended the following decree:

And now this     day of     1895, the above cause coming on to be heard upon bill, answer, replication, proofs and report of master, it is ordered and decreed that an account shall be taken of all the dealings and transactions between the complainant and the respondents under the agreement of 28th February, 1871, and the supplemental agreements thereto.

It is ordered and decreed that the accounting heretofore made by the respondents is incorrect and untrue in that they did, without the knowledge of the complainant, charge him improperly and erroneously with a higher price for materials than was just under said agreements, and that they charged him with a greater cost of labor than was actually paid by them, and that the accounts between the complainant and respondents be opened and the respondents account de novo.

It is ordered that the respondents shall account for all their receipts under said agreements; that in said account they shall be allowed a credit for materials furnished not at the wholesale selling price of such materials as established by their sales to others, but at the usual wholesale selling price of said materials

in the market at the time of furnishing the same; that they shall be allowed a credit only for the actual cost of the labor furnished and done by them in the manufacturing of articles under said agreement; and that when the balance is ascertained, due to the complainants, upon the taking of said account they shall pay over the same to the plaintiff with interest and costs.

It is ordered that this account shall be taken before

as master; that he shall take all testimony necessary thereunder; and that he shall report to the court said account thus taken, and the balance due to the plaintiff thereunder.

Exceptions to the master's report were sustained in an opinion by BIDDLE, J., and a decree was entered dismissing the bill.

*Error assigned* was decree dismissing bill.

*J. H. Shoemaker* and *John G. Johnson*, for appellant.—The appellees could only deduct the actual cost of manufacture. They were not entitled to guess as to this. Upon proof that the cost deducted was erroneous, the appellant is entitled to true accounting: People v. Clark, 37 Hun, 201; Heald v. Cooper, 8 Me. 32.

The appellees could not charge as cost of labor more than was actually paid. They could not charge, for goods bought specially as ingredients, in which they did not deal, more than the cost thereof. They could not charge for materials used as ingredients, dealt in by them, more than the wholesale price thereof in the market.

The semiannual statements, accepted from time to time by the appellant, under the circumstances, do not bar his remedy.

The right of the appellant, under the circumstances, is not barred by a lapse of time: Blair v. Bromley, (2 Phillips) 22 Eng. Chancery, 359; Moore v. Knight, L. R. 1 Ch. Div. 547; Trimble v. McCormick, 15 S. W. Rep. 358; Beers v. Myers, 28 Ill. App. 648.

Equity has jurisdiction to order a discovery and an account in the present case: Adam's App., 113 Pa. 457.

The right to relief, under the bill filed, was not barred though the master failed to find fraud and only found mistake.

*Richard C. Dale*, for appellees.—The contract in terms by the

use of the word " estimate " shows that the mind of the parties recognized that the computation must be made from inexact and incomplete data. It did not impose upon the defendants a duty of keeping a detailed account of the time which each workman expended in preparing the materials and compounding the paint manufactured. The defendants were entitled to assume that wholesale price meant the price at which they sold by wholesale, not only as to articles which they manufactured but also as to articles which they bought for resale.

The continuous construction of the contract by the unquestioned action of the parties for sixteen years should be binding upon the court: 1 Am. & Eng. Ency. of Law, 109 ; Cruise v. Walker, 6 Phila. 294; Story, Equity Jur. sec. 529.

The master's view of what is mistake against which equity will relieve, we submit, is not based upon a correct understanding of the principles which are enforced in a court of chancery.

By the pleadings the only ground upon which the accounts rendered by the defendants to the plaintiff are contested is that of fraud. The answer denies fraud, and the master finds that no fraud was committed. The case having gone to trial upon the sole issue of fraud, it is not competent for the court to enter a decree, even if it was convinced that the proofs showed mistake, as, if the pleadings had charged the mistake as the ground of relief, it might have entitled the plaintiff to a decree : Edwards v. Brightly, 44 Leg. Int. 132; Spering's App., 60 Pa. 199; Elder v. Clark, 51 Fed. Rep. 120 ; Peddicord v. Connard, 85 Ill. 102; Chappedelaine v. Dechenaux, 4 Cranch, 309 ; Smith v. Ogilvie, 25 N. Y. 382; Lockwood v. Thorne, 11 N. Y. 170 ; Willis v. Jennegan, 2 Atkyns, 251 ; Stearns v. Page, 7 Howard, 829 ; Johnson v. Curtis, 3 Bro. C. C. 366 ; Matthews v. Wallwyn, 4 Ves. 124; Coleman v. Mellers, 2 Mac. & Gordon, 308 ; Pritt v. Clay, 6 Beav. 506 ; Clarke v. Tipping, 9 Beav. 284 ; Capon v. Miles, 13 Price, 767 ; 2 Daniel's Chanc. Prac. 761 ; Wood v. Cone, 7 Paige, 473 ; 1 Story's Equity Jur. sec. 323 ; Shillingford v. Good, 95 Pa. 33.

OPINION BY MR. JUSTICE GREEN, October 5, 1896 :

By the terms of the agreement between these parties the plaintiff was interested in the transactions of the defendants under the contract, in the manner of a partner. The manufac-

turing was to be done in accordance with instructions to be given by the plaintiff, who was the patentee of the processes to be used. The defendants were to be the sole manufacturers of the paints in question. They were to furnish all the capital necessary to carry on the manufacture, and, by necessary implication, the place and means of manufacture. There is no direct provision as to who should sell the products, and the agreement seems to contemplate sales by each party. But, by one of the clauses, it is provided "that all the net profits arising from the direct sales of said Patent Paint Filler made by said party of the second part or by their travelling salesmen shall accrue to the benefit and advantage of the said party of the first part in the same proportion as though sold directly by the said party of the first part." By another clause of the contract it was stipulated that the plaintiff should give to the defendants "one third of the net profits arising from the entire sale of the Patent Paint Filler." This provision looks as if the plaintiff was to be the seller of the entire product and, therefore, the recipient of the whole proceeds of sales. As a matter of fact the sales were made by the defendants. The interests of the parties, therefore, were a participation in the net profits of the business in the proportion of one third to the defendants and two thirds to the plaintiff. The venture was a joint one in which the interest of each was a share of the net profits, but the cost of manufacture was to be borne by the defendants alone. The contribution of the plaintiff to the joint enterprise was to be the use of his patents and such personal service as was necessary in giving instructions for the manufacture, and the contribution of the defendants was to be the capital requisite to carry on the business and the cost of manufacture. That which resulted from the business, to wit, the profits, were to be divided between the parties. It is very clear that the plaintiff had a necessary and direct interest in the subject of the cost of manufacture, as profits would be the resulting gain after the cost of manufacture should be deducted. It is not easy to understand why he was not entitled to the same knowledge of the details of the business and to the same degree of good faith as to all the transactions of the parties, as if their relation had been that of actual partnership. It seems to us that the necessity of keeping accounts which embraced the cost of

manufacture and the amount, number and proceeds of sales was as great as though the parties were technically partners. And of course any accounts that were, or should have been, kept must be accurate and correct. Some consideration should doubtless be given to the expression in the contract, "the cost of manufacture to be estimated by the wholesale price of the materials and packages used and the amount of labor bestowed in its manufacture." Whatever may have been the meaning of the parties in the use of this phraseology, we cannot think that it was meant that the cost of materials and labor was to be merely a matter of estimate without any reference to the actual cost. It rather seems to us that it was intended to convey the idea that the wholesale price of materials and packages was to be taken as the cost price, and not the retail price, and to that was to be added the cost of labor. If we read the word "estimated" in the sense of "computed," which is one of its meanings, we would perhaps more accurately express what was in the minds of the parties. Then the sentence would mean that in ascertaining the cost of manufacture the wholesale price of materials and packages used and the cost of labor should be computed. The matter is not of much importance but it is at least certain that actual cost should be the basis of the calculation to determine what was the amount of net profits.

We have not the slightest hesitation in holding that the case was a proper one for equitable jurisdiction. Whether on the ground of discovery, which was absolutely necessary, or mistake, or complicated accounts, or community of interest in a common enterprise where all the accounts were in the hands of one of the parties, and the situation was one which involved a trust and confidence, it is perfectly clear that the only suitable and complete remedy was by a bill in equity. There is but little controversy on this subject. The serious matter of contention grows out of the long delay of the plaintiff and his repeated acts of acquiescence in the method of stating accounts pursued by the defendants. For sixteen years the plaintiff received semiannual statements from the defendants, purporting to state the cost of materials and labor, and dividing the resulting profits, of which he accepted his share without complaint. The learned court below dismissed the bill on this ground. In ordinary circumstances it would be sufficient.

But after an extremely patient and careful consideration of the testimony and the master's report, we think he was justified in his findings of fact and conclusions of law, and that the bill should be sustained. We cannot regard the final statements delivered to the plaintiff in January and July, 1887, as a stated account. The master has found that they were not received by the plaintiff as true and correct, and that there was nothing in his conduct from which it could be considered that they were accounts stated. He finds also that sometime in 1886 a question arose between the parties as to the meaning of the word " wholesale " in the agreement, and that after learning that the defendants had charged him an advance on the price of different materials purchased from others, he demanded a detailed account for the year 1885 of the quantity of different paints manufactured and sold, the prices charged for the different articles used in the manufacture and the amount paid for labor. The plaintiff also instituted tests to determine the cost of the labor necessary to produce the paints, and ascertained that the charges against him for labor were much in excess of the amounts which were properly chargeable to him under the contract. This is also found by the master to be the fact. Subsequently to the plaintiff's demand for an account he received from the defendants two statements which were unsatisfactory, and he thereupon filed the present bill. It was claimed by the defendants that the semiannual statements and the last two statements constituted an account stated by which the plaintiff was bound so that the account could not be opened. The master in a very able and exhaustive review of the authorities and also of the testimony reached the conclusion that the statements were not stated accounts; that the whole subject of the accounts between the parties was an open one; that the statute of limitations was not a bar to the plaintiff's claim, and that the defendants were liable to an accounting which he accordingly ordered, and recommended a suitable decree to that end. We are of opinion that the master was right in his view of the case, and in directing an account to be taken, and for that reason we now reverse the decree of the court below dismissing the bill, and we make the decree recommended by the master. We are satisfied with the reasons and authorities presented by the master in his report, but do not discuss them now

because no account has been taken, and we cannot know what it will be. After an account has been taken and the various questions arising between the parties have been considered and disposed of upon final hearing, we will be prepared to hear and determine them on their merits if the case should again come before us.

The decree of the court below is reversed and the plaintiff's bill is reinstated at the cost of the appellees. And it is now ordered, adjudged and decreed that an account shall be taken of all the dealings and transactions between the complainant and the respondents under the agreement of 28th of February, 1871, and the supplemental agreements thereto. It is ordered and decreed that the accounting heretofore made by the respondents is incorrect and untrue, in that they did without the knowledge of the complainant charge him improperly and erroneously with a higher price for materials than was just under said agreement; that they charged him with a greater cost of labor than was actually paid by them, and that the accounts between the complainant and respondents be opened and the respondents account de novo.

It is ordered that the respondents shall account for all their receipts under said agreements; that in said account they shall be allowed a credit for materials furnished, not at the wholesale selling price of such materials as established by their sales to others, but at the usual wholesale selling price of said materials in the market at the time of furnishing the same; that they shall be allowed a credit only for the actual cost of the labor furnished and done by them in the manufacturing of articles under said agreement, and that when the balance is ascertained due to the complainant upon the taking said account they shall pay over the same to the plaintiff with interest and costs.

It is ordered that this account shall be taken before D. Webster Dougherty, Esq., of Philadelphia; and that he shall take all testimony necessary thereunder; and that he shall report to the court said account thus taken and the balance due to the plaintiff thereunder. The record is remitted to the court below in order that this decree may be carried into effect.