# Grange, Appellant, *v.* Penn Mutual Life Insurance Company.

*Insurance—Life insurance—Mutual policy—Premium notes— Sharing in Profits—Equity.*

1. Where a mutual life insurance policy containing a clause for sharing in surplus profits provides for punctual payment of premiums in cash, but does not forbid the taking of premium notes by the company, and does provide that "all outside liability under this policy shall be first paid off before paid up insurance shall be issued in its place," the holder of the policy cannot object that the company accepted premium notes, on other policies of the same class, where it appears that such notes were always taken before the premiums were due, and there is no evidence of any default in payment on them.

2. Where the holder of such a policy files a bill in equity for specific performance of his contract of insurance, and for an accounting of apportioned surplus or profits, the plaintiff cannot complain that his share of the surplus was reduced by the acceptance by the company of premium notes, before premiums were due, inasmuch, as, even if the acceptance of the premium notes was not in accordance with the express terms of the contract, it would be impossible to ascertain the damage, if any, which plaintiff suffered because of such violation, for there would be no way of determining which, or how many, of those who gave premium notes would have managed to pay the premium in cash, if the company had refused to accept the notes.

3. Where a mutual insurance policy provides that "the surplus derived from all policies on this plan which shall not be in force by payment of premiums as above specified, at the date of the completion of their respective accumulated surplus periods, shall be apportioned equitably among such policies only as shall complete" the period, and a court of equity on a bill for specific performance of the contract and for an accounting finds as a fact upon suffi-

cient evidence that the officers of the company properly and without fraud apportioned the surplus, the appellate court will not at the instance of a policyholder reverse such finding where there is sufficient evidence to justify the finding.

4. A mutual insurance company cannot discriminate among its policy holders, and any agreement which would result in the payment of larger proportionate dividends to one of its policy holders than to others in the same class would be illegal and void.

5. Statements made by the assistant secretary of a mutual life insurance company to a proposed insurer to the effect that a certain amount would be realized to the insured upon a distribution of surplus profits at the expiration of the payments on the policy, are not binding upon the company, especially where it appears that the statements were based on past experience with some basis of fact, and that the statements although rose-colored were not in fact fraudulent.

*Equity—Accounting—Interrogatories.*

6. A decree in equity will not be reversed because of the refusal of the court below to compel a defendant insurance company to answer certain interrogatories in advance of the trial, where it appears that the subject matter of the interrogatories was brought out at the trial by the examination of the defendant's officers, and that certain of the interrogatories were of such a nature that an answer to them would have been equivalent to the rendering of an account in advance of a decree awarding it.

*Equity—Insurance companies—Accounting—Right of policy holders.*

7. In a proper case a policy holder in a mutual insurance company has a right to an accounting of the moneys of the company to which he is entitled under his contract, and he is not to be dismissed with the statement that he is bound by the actions of the trustees of the company; but he will not be awarded a decree where the court finds as a fact that the trustees have acted in good faith and in accordance with the contract and the law.

Argued January 17, 1912. Appeal, No. 216, Jan. T., 1911, by plaintiff from decree of C. P. No. 1, Phila. Co., Dec. T., 1907, No. 2906, on bill in equity in case of Charles E. Grange v. The Penn Mutual Life Insurance Company. Before Brown, Mestrezat, Potter, Elkin and Moschzisker, JJ. Affirmed.

Bill in equity for specific performance for an account, and for discovery. Before Kinsey, J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree of the court.

*J. H. Shoemaker,* for appellant.—The effect of the company's actions was to change the character of the policy from an accumulated surplus policy on which premium should be paid in cash, and from which, for that reason, profits to surviving, punctual policy-holders are greater than from any other form of policy, to one on which premiums could be paid by notes. The company had no right to alter the plan of insurance.

The company has the right to regulate its internal affairs and provide for their management and administration, but as between the company and the insured it is bound by its contract: Fire Ins. Co. of Northampton County v. Connor, 17 Pa. 136; Rosenberger v. Wash. Mut. Fire Ins. Co., 87 Pa. 207; Lavalle v. Societe Saint Jean Baptiste de Woonsocket, 17 R. I. 680; Fuller v. Metropolitan Life Ins. Co., 37 Fed. Repr. 163; Pierce v. Equitable Assurance Society, 145 Mass. 56, 12 N. E. Repr. 858.

The distribution of surplus among all participating policy holders and retention of part by the company in a contingent fund was improper: Pierce v. Assurance Society, 145 Mass. 56, 12 N. E. Repr. 858; Uhlman v. Ins. Co., 109 N. Y. 421, 17 N. E. Repr. 363; Greeff v. Equitable Life Assur. Soc., 160 N. Y. 19, 54 N. E. Repr. 712; Equitable Life Assur. Soc. v. Brown, 213 U. S. 25, 29 Sup. Ct. Repr. 404; Gadd v. Equitable Life Assur. Soc., 97 Fed. Repr. 834.

The company was liable for its officers' misrepresentations: Holden v. Bernstein Mfg. Co., 232 Pa. 366; McGowin v. Remington, 12 Pa. 56; Winton's App., 97 Pa. 385; Russell v. Clark, 11 U. S. 69; Virginia & Ala. Min. & Mfg. Co. v. Hale, 93 Ala. 542, 9 So. Repr. 256;

Wilkinson v. Starr, 14 W. N. C. 359; Jones v. Farquhar, 186 Pa. 386; Hindman's App., 85 Pa. 466.

The refusal of court to order company to answer interrogatories and to sustain plaintiff's exceptions to company's answer to bill was improper: Black v. Ins. Co., 16 Phila. 72; Gillingham v. Baker, 22 Leg. Int. 117; Paper Co. v. Hincken, 21 W. N. C. 227; Bains v. Goldey, 35 Pa. 51.

*G. W. Pepper,* with him *B. F. Pepper,* for appellee.— The acceptance of premium notes involved no violation of the contract with Grange and did him no ascertainable damage.

The company gave Grange a square deal and distributed to him at least as much of the surplus as he was fairly entitled to: McNab v. Mfg. Co., 62 Hun. 18, 16 N. Y. Supp. 448; McLean v. Plate Glass Co. 159 Pa. 112.

Regarding Hallowell's estimate as constituting an undertaking to pay dividends in excess of earnings, the contract was absolutely invalid and cannot be enforced: Taft v. R. R. Co., 8 R. I. 310; Lockhart v. Van Alstyne, 31 Mich. 76; Painesville & Hudson R. R. Co. v. King, 17 Ohio St. 534; Luling v. Ins. Co., 45 Barb. 510.

Regarding Hallowell's estimate as the basis of a claim in deceit, the evidence shows that his reference to past experience was made in good faith, and without intention to deceive; while the estimate of anticipated dividends was such a statement respecting future facts as will not support an action for deceit: Emerson v. Brigham, 10 Mass. 197.

The decision of the court below, sustaining the appellee's refusal to answer interrogatories, was clearly right: Equitable Life Assurance Society v. Brown, 213 U. S. 25, 29 Super. Ct. Repr. 404; Uhlman v. New York Life Insurance Co., 109 N. Y. 421, 17 N. E. Repr. 363; Everson v. Equitable Life Assurance Soc., 68 Fed. Repr., 258, 71 Fed. Repr. 570; Hunton v. Equitable Life As-

surance Society, 45 Fed. Repr. 661; Gadd v. Equitable Life Assurance Society, 97 Fed. Repr. 834; Holland v. Hallahan, 211 Pa. 223.

OPINION BY MR. JUSTICE POTTER, March 18, 1912:

The plaintiff filed this bill in equity against the defendant, The Penn Mutual Life Insurance Company of Philadelphia, praying for specific performance of a contract of life insurance in accordance with its terms, and for an accounting, and for discovery in aid of his proof. The policy in question was issued by the defendant company to the plaintiff on December 1, 1891, for $25,000, on what was known as the "accumulated surplus" plan. The annual premium was $1,516.50, to be paid during a period of ten years, and it was stipulated that the accumulated surplus period, extending over fifteen years, should end on November 27, 1906. It was provided that upon the completion of this period, if the policy should then be in force, by payment of the premiums as specified, the insured should have the privilege of exercising certain options therein set forth.

It appears that the plaintiff made payment of the ten annual premiums according to the terms of the policy, and at the expiration of the fifteen year period, on November 27, 1906, he accepted one of the options secured to him in the policy, which permitted him to withdraw the accumulated surplus apportioned to the policy, and take a full paid policy for the sum of $25,000. The defendant company offered to pay him as his share of the apportioned surplus, the sum of $3,347.15. The plaintiff declined to accept this amount, claiming that he was entitled to the sum of $7,800, in accordance with an estimate which was given to him by an officer of the company when he negotiated with it for the policy. Plaintiff alleges in his bill that he was induced to take the policy by reason of this estimate, and through representations made to him by the assistant secretary of the

defendant company, that the estimate was not inflated, but was based upon past experience of the company.

In the answer filed by the defendant company, it is averred that the company had no knowledge of the representations said to have been made by the assistant secretary, and it was denied that he had any authority to make any statements or representations that amounted to a guaranty. It was admitted that the accumulated surplus on such a policy as was afterwards issued to the plaintiff had been estimated by the assistant secretary at $7,800, and that the estimate was accompanied by a statement that the defendant company did not furnish "inflated estimates." It was averred that the sum of $3,347.15 was plaintiff's full portion of the accumulated surplus, and that the defendant had submitted to the plaintiff an account, showing how that sum was made up, and it was further averred that the defendant has accounted for the dividends, profits and portion of the surplus to which plaintiff is entitled. At the trial the defendant's eighteenth and nineteenth requests for findings of fact were affirmed by the trial judge as follows:

"(18) The sum of $3,347.15 tendered by defendant to plaintiff, includes his full and fair share of the earnings of the company during the term of his policy, and also of the company's surplus and the fund resulting from the forfeiture of other policies in his class."

"(19) The evidence shows that the dealings of the defendant with the plaintiff have been characterized by fairness and good faith on the part of the defendant."

And among other requests for findings of law by the defendant the trial judge affirmed the following:

"(6) The option which the plaintiff has elected to exercise is to take a paid-up participating policy for $25,000 and 'to withdraw the accumulated surplus apportioned to this policy by the company.' The plaintiff, in the absence of evidence of fraud or irregularity in the procedure of the trustees of the defendant, is bound by

the language of the policy and is not entitled to review their action in determining the amount of the dividend awards."

"(7) The plaintiff having availed himself of his option to withdraw his proportion of the accumulated surplus 'apportioned to this policy by the company,' and to accept a paid-up participating policy for $25,000, the company has fully performed its part of the contract with the plaintiff by tendering him such a policy and the sum of $3,347.15 in cash."

The trial judge then directed that the bill be dismissed. But upon consideration of exceptions filed, the court below ordered and decreed that the amount of $3,347.15, admitted to be due plaintiff, should be paid, and that a paid-up policy for the sum of $25,000 should be delivered to him, and that all other exceptions filed by plaintiff should be dismissed. Plaintiff has appealed, and has filed ninety-eight assignments of error.

The policy provided that the surplus derived from lapsed policies should be apportioned equitably among such policies only as shall have completed the accumulated surplus period. Appellant is dissatisfied with the amount of the surplus which, under this provision, was apportioned to his policy by the company, and he bases his claim for an accounting and for relief on three grounds: (1) That the defendant violated its contract by taking premium notes from policy holders who were not prepared to pay their premiums in cash when they fell due; (2) that the defendant did not make an equitable apportionment of the surplus and accumulations in accordance with the provisions of the policy; and (3) that he was induced to take the policy and perform the contract by misrepresentations which the defendant was bound to make good.

As to the first suggestion, the policy provides that the premiums should be punctually paid in cash. Appellant testified that before he accepted the policy, the assistant secretary of the defendant company told him

that the terms of the policy were very strict; that every man that went into this class of insurance was compelled to live up to its terms by paying the premium in cash the day it was due; that no notes would be received from anyone, and if the insured failed to pay his premium in cash the day it was due, he forfeited his right to a distribution; the result of the enforcement of this requirement being the accumulation of a very large fund, to be distributed among the persistent members. Appellant further testified that after his policy had expired, and after he had declined to accept the sum of $3,347.15 offered him by the company as his share of the surplus, the vice president of the company gave as one reason for the discrepancy between that sum and the estimate furnished him when the policy was taken out, that they had modified the terms of that style of policy by accepting premium notes, instead of insisting on punctual payment of premiums in cash, and that this had greatly affected the profits on that class of policies. Substantially the same statement appears in a letter written to appellant by the vice president.

To this position counsel for appellee answer (1) That the contract as set forth in plaintiff's policy does not forbid the taking of premium notes, and that while it stipulates for punctual payment of the premiums in cash, there is no stipulation that all premiums on other policies shall be so paid. (2) That the policy itself provided that, on surrender of the policy, "all outside liability under this policy (shall) be first paid off before paid-up insurance shall be issued in its place." And it is suggested that obviously the liability thus referred to, could only be for loans upon the policy, which loans might very well include those made to provide for unpaid premiums. In the third place it is contended that, even if the acceptance of the premium notes was not in accordance with the express terms of the contract, it would be impossible to ascer-

tain the damage, if any, which appellant suffered because of such violation, for there would be no way of determining which, or how many, of those who gave premium notes would have managed to pay the premiums in cash, if the company had refused to accept the notes. The argument in support of these suggestions is convincing to us, as it was to the trial judge. He found as a matter of fact that in no case during the term of appellant's policy was a premium note accepted from a policy holder whose premium was overdue. It was not merely an extension of the time for payment of the premium, but the transaction assumed the form of a loan upon sufficient security, and there is no intimation in the evidence of any default in payment of any of the premium notes. The trial judge also found that there was no evidence from which it could be inferred how much, if at all, the appellant was put to disadvantage through the acceptance of the notes of which he complains. And he concluded as matter of law that "there is nothing in the plaintiff's form of policy which deprives the officers of the insurance company of their discretionary right to accept the note of the policy holder for a premium not overdue." And further, that "the acceptance of premium notes from persons holding policies similar to the plaintiff's, was not under the facts disclosed by the evidence, a breach of the contract between the plaintiff and the company." Careful consideration of the question has led us to agree with these conclusions. If the transaction became less profitable to plaintiff, by reason of the more liberal treatment of its policy holders by the company, any loss possibly occasioned to him thereby could not be measured in any reasonable way. Any attempt to estimate it would be conjectural in the extreme.

As to the matter of apportionment of the surplus, the policy provides that "The surplus derived from all policies on this plan which shall not be in force by payment of premiums as above specified, at the date of the com-

pletion of their respective accumulated surplus periods, shall be apportioned equitably among such policies only as shall complete" the period.   Evidently it was intended that the policies under the "accumulated surplus" plan should form a class by themselves, and that the surplus accumulated from lapsed and forfeited policies should be distributed among the surviving members of that class only.   As we understand the evidence, it clearly appears that the divisible surplus was, in accordance with the discretion reposed in the trustees of the company, distributed to the policy holders in annual dividends.   In this distribution the policy of the appellant shared upon the same basis as that upon which every other policy was placed.   But in addition to these annual dividends, there was, upon the completion of the so-called accumulated surplus period, a distribution made of the sum derived from forfeited policies, and this amount was apportioned among the policies which had completed their accumulated surplus period.   This sum was added to the amount of the annual dividends previously credited to the policy, and, together with them, made up the accumulated surplus which the policy holder had the right to withdraw.   If there was anything in the evidence to indicate bad faith or serious error in the distribution of the surplus, or abuse of their discretion by the trustees, it would of course be the duty of the courts to give relief to an aggrieved policy holder.   But, in the absence of any such showing, we see no reason to justify any interference with the exercise of the discretion conferred by the charter of the defendant company upon its board of trustees. We do not understand that defendant refuses to set forth the basis upon which the sum tendered to appellant is made up.   No averment of mistake or miscalculation in making up the amount is made.   It is the methods pursued in creating the surplus fund, which was to be accumulated, and divided among the policy holders to which plaintiff belongs, to which exception

is taken. If those methods were right, and if the company was justified in their adoption and application, the details of the calculation are not questioned by plaintiff. We have no hesitation in saying that whenever a proper case is made out, a policy holder is entitled to an account, and is not to be dismissed with the statement that he is bound by the action of the trustees of the company: Thus, in Blair v. Supreme Council Am. Legion of Honor, 208 Pa. 262, where the question involved was as to the amount due the widow of a member of a beneficial association on his death certificate, a bill in equity for an accounting was sustained. Mr. Justice DEAN said (p. 266) that the case involved a full examination of the books and records of the defendant to determine the exact condition of what was called "the emergency fund," and continued, "We think, taking into view the relations of the parties, even though the Order be not technically a trustee for the widow, as well as the nature of the inquiry that may have to be made into records, the remedy at law would not have been an adequate one, and that a bill in equity is a more appropriate remedy and best adapted to the inquiry." Citing Bierbower's Appeal, 107 Pa. 14, where Mr. Justice GORDON said (p. 18) : "The equitable remedy may be adopted solely on the ground that it is more convenient than an action of assumpsit." The same principle was announced in Tully v. Felton, 177 Pa. 344, where Mr. Justice GREEN said (p. 356) : "We have not the slightest hesitation in holding that the case was a proper one for equitable jurisdiction. Whether on the ground of discovery, which was absolutely necessary, or complicated accounts, or community of interest in a common enterprise where all the accounts were in the hands of one of the parties, and the situation was one which involved a trust and confidence, it is perfectly clear that the only suitable and complete remedy was by a bill in equity." In Apollo Trust Co. v. Safe Deposit & Title Guaranty Co., 31 Pa. Super. Ct. 524, ORLADY, J., said

(p. 526) : "It is now fully established by many authorities, that jurisdiction in equity no longer depends solely upon the want of a common law remedy. If upon consideration by the court the remedy by an action in assumpsit is inadequate, or is insufficient to effect complete justice between the contending litigants, the court may properly adjudge the proceeding by a bill in equity to be the most convenient and effective in order to reach all the phases of the plaintiff's contention, so as to dispose of the whole matter by securing and protecting the present and future interests of all parties concerned in the controversy. This is particularly the rule when the facts are conceded by demurrer, and the accounts are complicated, or are all in the hands of one of the parties, or the situation involves a trust or confidential relation."

But in the present case the court below found in its affirmance of defendant's fourth request for findings of fact, that "The method pursued by the officers and trustees of the defendant company in determining the amount of surplus properly distributable in dividends, was a reasonable business method. There is no evidence from which it can be inferred that the trustees withheld from distribution, during Grange's term, more than prudence and good judgment required." He also found, in answer to the fifth request, that "The method pursued by the actuary in allotting among policy holders the dividend award of the trustees, was what is known as the contribution method, and was in fact the method authorized by the amendment of defendant's charter contained in the Act of March 11, 1870 (P. L. 384)." And again, in answer to the ninth request for findings of fact, he found that "the averments of the bill that the defendant has wrongfully misapplied portions of said surplus to profits, has withheld from the plaintiff and others in his class credits to which he was entitled, and has charged losses and expenses against that class not properly chargeable against it, and has failed to account

for sums derived from forfeitures, surrenders and death, are wholly unsustained by the evidence, and are found to have been improvidently made." These findings of fact negative the claim of appellant for relief in these particulars, and the evidence seems to be quite sufficient to justify the findings.

With regard to the third ground of complaint which concerns the allegation of misrepresentation upon the part of an officer of the company, which induced the taking of the policy, the appellant testified that as an inducement to him to insure on this plan, the assistant secretary stated that the accumulated surplus policy was very popular, and that they had gotten from it very good results which he showed witness. He said that on a fifteen-year policy for $25,000, the insured beginning at the age of forty-one would receive at the end of the term a paid-up policy for the same amount and an estimated sum of $7,800 in cash; and that, while they always put the word "estimated" in, witness could rely on getting the amount named; that it was the rule of the company to be always on the safe side, and never to put out an inflated estimate. Appellant also received from this officer a letter enclosing the estimate of $7,800, and saying that the company did not furnish "inflated estimates." It is conceded that at the time, the experience of the company with this class of policies was small. It had been issuing them for a few years only, and none had matured. It can hardly be denied that an estimate of $7,800 is inflated as compared with an actual result of $3,347.15.

Counsel for appellant contends that these statements of the assistant secretary of the company were misrepresentations of material facts, and that the company should be held responsible to him in damages for the deceit which he alleges was practiced. But with respect to this matter, the trial judge found that the evidence of misrepresentation was not sufficiently clear, precise and indubitable to demand a reformation of the policy,

and that the misrepresentations were concerned with matters which were the subject of estimate merely, and not of concrete fact, and therefore they do not support the appellant's allegation of fraud in the making of the contract. He further held that it was not within the power of the assistant secretary to bind the defendant company by any representation, in such a manner as to give to the plaintiff any advantage over other policy holders in the company. The court also found that the representation made by the assistant secretary that the estimate was based on the past experience of the company, did not constitute such deceit as would justify a recovery of damages by appellant, or would entitle him to an accounting by the company. These conclusions seem to us to reasonably follow from the evidence concerning the matter in question.

It will not do to construe the contract in this case as an agreement by which the company was bound to guarantee to appellant a certain definite amount of surplus. That was something which, from the circumstances, the future alone could determine. It depended for one thing, largely upon the number of lapsed policies which could not be foretold. The company is a mutual one, and in its accumulations all its policy holders had the right to share in the proportions fixed by the terms of their contracts. Whatever representation may have been made to appellant, he is and can be entitled to nothing more than his proportionate share of the surplus which actually accrued. It is obvious that a mutual insurance company cannot discriminate among its policy holders, and any agreement which would result in the payment of larger proportionate dividends to one of its policy holders than to others in the same class, would be illegal and void.

The view of this matter taken by the court below was undoubtedly right, as it appeared in the eighth and ninth of defendant's requests for findings of law, which were as follows:

"(8) The trustees of the defendant company are bound to administer their trust with due regard to the interests of all policy holders. They have no legal right, and no officer or agent acting under them can be invested with a valid authority, to make a special contract with one policy holder entitling him to a larger proportionate return upon his policy than that enjoyed by others of his class."

"(9) Hallowell's statements to the plaintiff did not impose upon the defendant any contractual liability to pay to the plaintiff any greater sum than his equitable proportion of the earnings and accumulated surplus of the defendant."

The statements made by the assistant secretary with regard to the probable amount of surplus and accumulations, were undoubtedly rose-colored, and were perhaps unduly influenced by his desire to get business for the company. But the evidence fairly shows, we think, that the past experience of the company, in so far as interest, mortality and dividends were concerned, taken in connection with what seems to have been accepted as the experience of other companies, in the matter of forfeitures under policies of the kind under discussion, afforded some basis at least for the estimate which was given. That the amount which appellant was to derive from surplus and accumulations was merely an estimate, appears plainly from the language of the option, as set forth in the policy. The reserve value of the policy is guaranteed to be not less than the sum set forth; that was something to be set apart from the payments of premiums, and it could be accurately determined in advance; but the amount of surplus and accumulations was merely an estimate, and was stated in the policy as such. The evidence was such as to carry conviction to the mind of the court below, that Hallowell had access to data upon which his prediction might have been based, and that his statements, though mistaken, were not inconsistent with good faith in the light of the facts as

they appeared at the time.   One of the witnesses called
by appellant, Mr. Garrigues, the mathematician of the
company, when asked whether the estimate of $7,800
could have been made in good faith, answered: "It
would require only a moderate assumption.   Good faith
would have indicated to Mr. Hallowell or anyone in his
position, that the forfeitures might easily approximate
forty per cent., by reason of lapses, death losses, and so
on; and, if it had been forty-two per cent., $7,800 would
have been realized."   Mr. Lippincott, another witness,
when asked as to the reasonableness of the Hallowell
estimate, said that the estimate made in 1891 was wholly
within the range of probability.   Evidence of intent
to deceive in this respect is lacking.   Nothing more than
the expression of an unduly enthusiastic opinion seems
to be left.   Representations of this character referring
merely to the future, are not sufficient to support an ac-
tion based upon the ground of fraud.

The last nineteen assignments of error are to the re-
fusal of the court below to compel the defendant com-
pany to answer certain interrogatories in advance of the
trial, and to the dismissal of various exceptions to de-
fendant's answers.   At the trial, the plaintiff called the
actuary and the mathematician of the company, and ex-
amined them with reference to the subject matter which
the interrogatories were intended to develop.   It would
seem, therefore, that appellant has had the benefit of
this information.   Several of the interrogatories were of
such a nature that to answer them would have been
equivalent to the rendering of an account in advance of
a decree awarding it.   As the case has been tried upon
its merits, and the officers of the company have been ex-
amined and re-examined on the matters set forth in the
bill, it would seem that the plaintiff has received all the
information from them to which he was entitled, and
we therefore deem it unnecessary to consider in detail
the assignments referring to the dismissal of the excep-
tions to the answers.

After careful consideration of the entire record in this case, with the aid of full and able argument of counsel, we are satisfied that upon none of the grounds of complaint, has a case been made out, which would justify the granting of the specific relief for which appellant prays. The assignments of error are therefore dismissed, and the decree of the court below is affirmed.