CHICAGO—FIRST DISTRICT—DECEMBER, 1917.    317

Cahn v. Northwestern Mutual Life Ins. Co., 208 Ill. App. 317.

# Benjamin R. Cahn, Appellee, v. Northwestern Mutual Life Insurance Company, Appellant.

## Gen. No. 23,301.

1. INSURANCE—*what is tontine.* Tontine insurance is a system based, under various forms, "upon the idea of a loan or investment of the property for the benefit of a number of persons, the income at first being divided among all and the shares of the members who die passing not to their own legal representatives but to increase the interest of the surviving member, until, at last, after the number of members has gradually diminished by successive deaths, the last survivor takes the whole income, or, if such be the terms agreed upon, the whole principal."

2. CORPORATIONS, § 178*—*what is right of holders of tontine policies as to inspection of books of company.* Holders of tontine policies are entitled to an inspection of the books and papers of the company in order that they may determine the proper amount of the surplus.

3. INSURANCE—*how proper amount of surplus of tontine policy ascertained.* The ascertainment of the proper amount of the surplus of a tontine policy involves the number, dates and amounts of the policies issued, the number terminated or the amount paid on account of them, the amount of premiums and other like items and the equitable apportionment of the surplus among the continuing policies.

4. INSURANCE, § 54*—*what does not constitute guaranty of amount of surplus on tontine policy.* Letter of an insurance agent as to the amount of surplus which would accrue on a tontine policy at the end of 20 years, *held* not a guaranty by the company that the insured would be entitled to that amount at the end of that time.

5. INSURANCE, § 54*—*when holder of tontine policy deemed to know that statement of agent as to surplus on policy at end of tontine period is only opinion.* One taking out a tontine policy is held in law to know that the amount of the surplus at the end of the tontine period will depend upon the happening of several contingencies during the period, and that any statement of an agent made at the beginning of the period as to the amount of the surplus can only be an estimate or opinion.

6. INSURANCE, § 912*—*when inclusion of interest in judgment in*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*action on tontine insurance policy is error.* It is error, in an action to recover an amount claimed to be due on an insurance policy, to include in the verdict and judgment interest on an amount admitted by defendant to be due and for which judgment had been recovered by plaintiff in a prior action, the claim for interest thereon having been merged in such prior judgment.

7. APPEAL AND ERROR, § 1802*—*when judgment will be reversed without remanding.* Errors of the trial court in refusing defendant's motion to instruct the jury in its favor and in granting plaintiff's motion for a peremptory instruction are errors which cannot be cured upon another trial, and in such case the Appellate Court will reverse the judgment without remanding, and will enter a judgment of *nil capiat.*

Appeal from the Circuit Court of Cook county; the Hon. ROBERT E. CROWE, Judge, presiding. Heard in this court at the March term, 1917. Reversed and judgment here. Opinion filed December 3, 1917. *Certiorari* denied by Supreme Court (making opinion final).

JOHN BARNES and SCOTT, BANCROFT, MARTIN & STEPHENS, for appellant; HORACE H. MARTIN and LESTER L. FALK, of counsel.

SILBER, ISAACS, SILBER & WOLEY, for appellee; FREDERICK D. SILBER and MARTIN J. ISAACS, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Plaintiff, holding a semitontine life insurance policy issued by the defendant, which had matured, was entitled to certain options, including one involving the cash payment to him of a so-called surplus; the amount of this surplus is the subject of this suit. Defendant says it is $2,396.98, but plaintiff claims that it is $6,245.50.

A phase of this case was formerly before us; see *Cahn v. Northwestern Mut. Life Ins. Co.,* 192 Ill. App. 172. Subsequent to that decision a judgment was entered against defendant for the amount admitted to be

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

due, that is, $2,396.98, and the judgment order recited "that this suit proceed as to the claim of the plaintiff for the allowance of interest upon the sum aforesaid, and as to all other disputed matters and issues made up between the parties thereto." Shortly thereafter, that is, on May 6, 1915, this judgment was paid and satisfied of record.

Upon the trial of the issues left open the court denied a motion to instruct for the defendant and allowed a motion to instruct the jury to return a verdict for the plaintiff for $5,221.43; this includes the balance of the surplus claimed by plaintiff with interest, and also interest on the amount of surplus as admitted by the defendant from the date of the maturity of the policy to the payment of the judgment therefor. Upon this verdict judgment was entered from which defendant has appealed.

To what amount of surplus is plaintiff entitled? Determined alone from the language and theory of the policy, the amount is as stated by defendant, $2,396.98, but plaintiff asks for the dominant effect of a letter given to him by one of defendant's agents prior to the issuance of the policy.

The evidence tends to show that some time in October or November, 1891, a Mr. St. Giles, a solicitor of insurance for defendant, gave to plaintiff a written proposal which in part was as follows:

"Benj. R. Cahn, Esq., City.

"Dear Sir:—

"I hereby present for your consideration the following proposition for $10,000.00.

"Your insurance age is 29, changing on the 26th of Feb. '92 Plan 20 payments life 20 years non-forfeiting Semi-tontine.

At the end of 20 years the policy guarantees the insured the following options, one of which is sure to meet your circumstances:

1st Option:—
To withdraw, IN CASH, the guaranteed
  • Reserve                          $ 4,708.80
And the Accumulated Surplus (esti-
  mated)                         $ 6,245.50

                  Total,      $10,954.30

"Our estimates are exceedingly conservative; they are based on the dividend of 1884, the LOWEST paid for years, with only 5½ per ct. interest when the Company earns 6.22 per ct. on its entire assets.

2nd Option:—
 *     *     *     *     *     *     *     *

3rd Option:—
To cash the surplus              $ 6,245.50
And receive a PAID-UP POLICY for     $10,000.00"
Plaintiff kept this proposition for a few weeks and then went to the office of the general agents of the company in Chicago. Plaintiff says he handed the paper to one of the agents, saying, "I want to buy this insurance"; that he thereupon signed some papers and underwent a medical examination, and left, taking with him the proposal. About two weeks thereafter the defendant issued the policy in question and delivered the same to plaintiff.

The policy purports to be on the semitontine plan, and its tontine dividend period was 20 years. It provided that the policy should, "if kept in force, share in the surplus according to the Company's usage, at each distribution after twenty years from the date hereof, until all contributions to the surplus found in the course of making such distributions to have arisen from this policy shall have been returned." It was also provided that "No dividend shall be allowed or paid upon this policy, unless the insured shall survive the completion of the Tontine Dividend Period, and unless this policy shall then be in force." Further provisions are as follows:

"9th.   The condition last preceding being contained in all policies issued on the Semi-Tontine Plan, all savings made in consequence of it shall be apportioned equitably among such policies issued on that plan as shall complete their Tontine Dividend Periods; and in making such apportionment, savings from lapses occurring in any year shall be distributed among those policies only upon which premiums shall have been payable in that year.

"10th.   Upon the completion of the Tontine Dividend Period provided this policy shall not have been terminated previously by lapse or death, the said insured or his assigns, without the consent of any other person named as beneficiary, if any, shall have the option either:

"First, to withdraw in cash the accumulated surplus apportioned by the Company to this policy, leaving the policy full paid for its face.

"Secondly, on furnishing satisfactory proof that the insured is then in good health, to apply said surplus to the purchase of a non-forfeitable participating paid-up addition to the amount insured under this policy.

"Thirdly, to surrender this policy and receive therefor in cash its entire share of assets (that is, the accumulated reserve, together with the surplus apportioned), which reserve the Company guarantees shall not be less than Forty-seven hundred eight and 80/100 dollars, in addition to said surplus, or

"Fourthly, to surrender this policy and apply said entire share of assets to the purchase of a non-participating paid-up policy, payable in case of death to the executors, administrators, or assigns, of the said insured, provided that satisfactory proof be furnished that the insured is then in good health.   But if no notice in writing of the way elected in which to apply the Tontine Dividend be given to the Company within sixty days after the completion of the Tontine Dividend Period, then the Tontine Dividend shall be applied in the first way mentioned.

\*          \*          \*          \*          \*          \*

"It is hereby stipulated and agreed by the Company that in addition to the options mentioned above, the insured, at the completion of the Tontine Dividend Period, shall have the privilege of applying the apportioned surplus to the purchase of an Immediate Annuity, at the Company's published rates."

Attached to the policy was a copy of the application paper signed by plaintiff. Among other questions and answers was the following:

"11. Do you understand and agree that no) statements, representations or informa-) tion made or given by or to the person) soliciting or taking this application for) a policy, or to any other person, shall) be binding on the Company or in any)    Yes. manner affect its rights, unless such) statements, representations or informa-) tion be reduced to writing, and pre-) sented to the officers of the Company) at the Home Office in this application? )"

Upon the completion of the tontine period, plaintiff gave no notice in writing of the option which he wished to exercise, and accordingly, under the terms of the policy, the first option became operative, and in accordance therewith defendant tendered to plaintiff the sum of $2,396.98 in cash, which it is not disputed represented the accumulated surplus apportioned by the defendant under the provisions and plan of the policy.

In Bouvier's Law Dictionary, vol. 2, edition 1914, tontine insurance is defined as:

"A system of insurance which under various forms is based upon the idea of a loan or investment of property for the benefit of a number of persons, the income at first being divided among all and the shares of members who die passing not to their own legal representatives but to increase the interest of the surviving member, until, at last, after the number of members has gradually diminished by successive deaths, the last survivor takes the whole income, or,

if such be the terms agreed upon, the whole principal."

And further:

"Policies of this character are kept in classes of ten, fifteen, or twenty years, called respectively the tontine periods, and accounts are kept with the funds of each class to ascertain the amount due on each policy at the expiration of its tontine term, at which time the surplus profits are apportioned equitably among such policies as complete the term." *Pierce v. Equitable Life Assurance Society*, 145 Mass. 56.

Holders of such policies are entitled to an inspection of the books and papers of the insurance company in order that they may determine the proper amount of the surplus. *Ellinger v. Equitable Life Assurance Society*, 132 Wis. 259. To ascertain the proper amount of surplus involves "the number, dates and amounts of tontine policies issued; the number terminated by death, lapse or otherwise, or the amount paid on account of them; the amounts of premiums or other items necessary to the ascertainment of the surplus, and the equitable apportionment of it among the persistent policies. Only by an inspection of the books and papers of the defendant in its possession can the items be ascertained." *Townsend v. Equitable Life Assurance Society*, 263 Ill. 432, 439.

Did the prior letter of the agent, St. Giles, amount to a guaranty by the company of the amount of surplus? We hold that it did not. It is unnecessary to consider the binding force of this proposal upon the company, or the question whether it was merged into the policy, for we are of the opinion that the proposal itself does not amount to a guaranty. By this proposal plaintiff was offered a "20 years * * * Semi-Tontine policy," that is, a policy with a surplus to be determined at the end of the tontine period in accordance with the theory of such policies. Plaintiff must be held in law to know that the proposal offered that kind of insurance; hence he must have known

that the amount of the surplus at the end of the ton tine period would depend upon the happening of several contingencies during this period, and that any statement made at the beginning of the period of the amount of this surplus could only be an estimate or opinion. Entirely consistent with this kind of insurance, the proposal states in explicit words that the figures given as to the amount of surplus which might be expected were ''estimated,'' which estimates it was said were conservative, based upon previous experience. The fact that this explanatory language was not used where the surplus was again mentioned in the proposal is of no importance; it was sufficient once to indicate its contingent character. Our conclusion as to the effect of the St. Giles proposal is in accordance with what was said in *Keithley v. Mutual Life Ins. Co.,* 271 Ill. 584, where a similar representation as to the amount of surplus was characterized as ''no more than a prophecy,—the expression of an expectation.''

We find nothing in the cases cited by counsel for plaintiff which dissuades us from our conclusion, although it may be conceded that some of them are not in harmony with our views. On the other hand we find many cases, which seem to us of greater persuasive force, which support us. Among these are *Langdon v. Northwestern Mut. Life Ins. Co.,* 199 N. Y. 188; *Williams v. New York Life Ins. Co.,* 122 Md. 141, 89 Atl. 97; *O'Brien v. Equitable Life Assurance Society,* 173 Mich. 432, 138 N. W. 1086; *Grange v. Penn Mut. Life Ins. Co.,* 235 Pa. 320, 84 Atl. 392; *Untermyer v. Mutual Life Ins. Co.,* 128 N. Y. App. Div. 615, 113 N. Y. Supp. 221; *Tourtellotte v. New York Life Ins. Co.,* 155 Wis. 455, 144 N. W. 1117.

It was error to include in the verdict and judgment interest upon $2,396.98, the amount of surplus admitted by defendant to be due. This amount, as we have seen, was put into judgment, and the claim of

interest on that was merged in the judgment. The plaintiff had no further right then to claim interest on that sum. The evidence also shows a tender of this amount, which plaintiff declined to accept.

Under the contract of the parties plaintiff was not entitled to recover any more than the amount of his first judgment, and the trial court in the present case should have allowed defendant's motion to instruct the jury in its favor, and should have denied plaintiff's motion for a peremptory instruction; and as the errors of the trial court were errors of law which cannot be obviated or cured upon another trial (*Pennington v. Grand Trunk Western Ry. Co.*, 277 Ill. 39), the judgment will be reversed without remanding, and judgment of *nil capiat* will be entered in this court.

*Reversed and judgment here.*