**76 P.2d 6**

### LOUGEE v. NEW MEXICO BUREAU OF REVENUE COMMISSIONER et al.

No. 4261.

Supreme Court of New Mexico.

Sept. 14, 1937.

On Rehearing Jan. 17, 1938.

Eugene D. Lujan, of Los Lunas, and M. J. McGuinness and George Lougee, both of Albuquerque, for appellant.

Frank H. Patton, Atty. Gen., and J. R. Modrall, Richard E. Manson, and Fred J. Federici, Asst. Attys. Gen., for appellees.

BRICE, Justice.

The Legislature of the state of New Mexico for the year of 1934 enacted chap-

ter 7, Sp.Sess., entitled: "An Act to Provide for the Raising of Revenue for Emergency School Purposes by Imposing an Excise Tax Upon the Engaging or Continuing in Business, Professions, Trades and Callings For Profit in This State; Providing For the Levy, Assessment, and Collection of Said Tax; Providing For the Distribution of the Taxes So Collected and Making an Appropriation of the Same; Making Appropriations For the Administration of This Act, and For Refunds of Taxes Unlawfully Collected; Providing Penalties For the Violation of the Provisions of This Act: Repealing Chapter 72, and 115 of the New Mexico Session Laws of 1933, and Declaring an Emergency."

By chapter 73 of the New Mexico Laws of 1935 the Legislature enacted a new revenue law with substantially the same title and, in so far as this case is concerned, to the same effect. The portions of the 1935 law material to this case (and those of 1934 are exactly the same) are as follows:

"Section 201. There is hereby levied, and shall be collected by the Tax Commission, privilege taxes, measured by the amount or volume of business done, against the persons, on account of their business activities, engaging or continuing, within the State of New Mexico, in any business as herein defined, and in the amounts determined by the application of rates against gross receipts, as follows: * * *

"H. At an amount equal to two per cent of the gross receipts of any person engaging or continuing in the practice of any profession, or of any business in which the service rendered is of a professional, technical or scientific nature and is paid for on a fee basis, or by a consideration in the nature of a retainer."

"Section 304. All taxes levied hereunder shall be due and payable in monthly installments on or before the 15th day of the month next succeeding the month in which the taxes accrue. The taxpayer, on or before the 15th day of the month next succeeding the month in which the tax accrues, shall make out and file with the Tax Commission a return for the preceding month in such form as may be prescribed by the Tax Commission, showing the nature of the business engaged in by the taxpayer, the gross receipts of the taxpayer for the period covered by the return, and amount of the tax for such period, and such additional information as the Tax Commission may deem necessary for the proper administration of this act. The taxpayer shall accompany the return with a remittance of the amount of the tax due. * * *

"Section 309. If any taxpayer neglects or refuses to make a return as required by this act, the Tax Commission shall make an estimate based upon an examination of the taxpayer's books and records, or upon any information in its possession, or that may come into its possession, of the amount of the gross receipts of the delinquent taxpayer for the period in respect to which he has failed to make return, and upon the basis of said estimated amount shall com-

pute and assess the tax payable by the delinquent taxpayer, adding to the sum thus arrived at a penalty equal to 50% thereof, together with interest at the rate of 1% per month on the tax and penalty from the date the tax was due. Promptly thereafter the Tax Commission shall give the delinquent taxpayer written notice of such estimated tax, penalty and interest, which notice shall be served personally or by mail. * * *

"Section 313. No injunction or writ of mandamus, or other legal or equitable process, shall issue in any suit, action or proceeding in any court of this state, or against any officer thereof, to prevent or enjoin the collection of any tax, penalty or interest under this act; but after payment of any such tax, penalty or interest under protest, which protest shall be duly verified by oath and shall set forth the grounds of objection to the legality of the tax, the taxpayer may bring action against the Tax Commission in the District Court of Santa Fe County for the recovery of any tax, interest or penalty so paid under protest. No such action shall be instituted more than sixty days after such payment under protest is made, and failure to bring such suit within said sixty days shall constitute a waiver of said protest and of all claims against the State on account of any illegality in the tax so paid. No grounds of illegality of the tax shall be considered by the court other than those set forth in the protest filed at the time payment is made. Appeals from the final judgment of the District Court may be taken to the Supreme Court by either party in the same manner as appeals in civil cases are taken. * * *

"Section 316. If any tax, or any portion thereof, or any interest or penalty, imposed by this act be not paid within thirty days after the same becomes due, the Tax Commission shall issue a warrant under its official seal, directed to the sheriff of any county of the state commanding him to levy upon and sell the real and personal property of the person owing the same, found within his county, for the payment of the amount due, and an added amount of ten per centum of the tax in addition to any other penalties imposed, and interest, and cost of executing the warrant, and to return such warrant to the Tax Commission and pay to it the money collected by virtue thereof, by the time to be therein specified, not more than thirty days from the date of warrant.

"The sheriff to whom such warrant is directed shall, within five days after the receipt of the same, file with the county clerk of his county a copy thereof (for which said clerk shall make no charge), and thereupon the county clerk shall record the same on his records and the day when such copy is filed. Thereupon the amount of the warrant so filed and entered shall become a lien upon all property, real and personal, of the person against whom it is issued, including choses in action, except negotiable instruments not past due. The sheriff thereupon shall levy upon any property of the taxpayer, including nego-

tiable instruments, and said property so levied on shall be sold in all respects, with like effect, and in the same manner as is prescribed by law in respect to executions against property upon judgments of a court of record, and the remedies of garnishment shall apply. The officer shall be entitled to the same fees for his services in executing the warrant as now allowed by law for like services, to be collected in the same manner as now provided by law for like services."

The appellant is an attorney at law practicing his profession in the city of Albuquerque, Bernalillo county, N. M. He refused to make any return of the moneys received by him on account of his practice of law for the period from December 1, 1934, to July 31, 1935, and failed to pay any tax imposed by chapter 7, Laws 1934 (Sp.Sess.), and chapter 73, Laws 1935, for said period of time. The Bureau of Revenue of the state of New Mexico made an estimate, based upon certain information in its possession, of the amount of the gross receipts of appellant during said time and fixed the total of the estimated tax, penalty, and interest for such time at $75, and gave appellant notice thereof, but that he took no action with reference thereto. Thereafter, on December 20, 1935, the Bureau of Revenue issued a warrant under its official seal, directed to the sheriff of Bernalillo county, commanding him to levy upon and sell the real and personal property of the appellant for the amount of the tax. Thereupon appellant instituted this action in the district court of Bernalillo

county and secured a temporary restraining order restraining the appellees from taking any steps to collect the tax, upon the alleged ground that the tax was void upon constitutional grounds.

Upon hearing appellant's petition for an injunction to restrain the collection of the tax was dismissed and judgment rendered in favor of the appellees, from which this appeal is prosecuted.

It is specifically provided by section 313 of the act of 1935, and section 314 of the act of 1934, that this character of action shall not be brought. A remedy is provided by section 313 of the Laws of 1935, and section 314 of the Laws of 1934, to determine the legality or constitutionality of the law, or the levy of the tax by an action for that purpose, after the payment of the tax under protest. That such a law is constitutional has been determined in a number of cases.

In Snyder v. Marks, 109 U.S. 189, 3 S.Ct. 157, 160, 27 L.Ed. 901, the court said with reference to the collection of a tax assessed by the Commissioner of Internal Revenue against a manufacturer of tobacco, under a statute which provided no suit for the purpose of restraining the assessment or collection of such tax shall be maintained in any court: "The inhibition of section 3224 [26 U.S.C.A. § 1543] applies to all assessments of taxes, made under color of their offices, by internal revenue officers charged with general jurisdiction of the subject of assessing taxes against tobacco manufacturers.

The remedy of a suit to recover back the tax after it is paid is provided by statute, and a suit to restrain its collection is forbidden. The remedy so given is exclusive, and no other remedy can be substituted for it. Such has been the current of decisions in the circuit courts of the United States, and we are satisfied it is a correct view of the law."

The state of Arizona has the following provision in its tax law: "No person upon whom a tax has been imposed under any law relating to taxation shall be permitted to test the validity thereof, either as plaintiff or defendant, unless such tax shall first have been paid to the proper county treasurer, together with all penalties thereon. No injunction shall ever issue in any action or proceeding in any court against this state, or against any county, municipality, or officer thereof, to prevent or enjoin the collection of any tax levied. After payment an action may be maintained to recover any tax illegally collected, and if the tax due shall be determined to be less than the amount paid, the excess shall be refunded in the manner hereinbefore provided." Rev.Code 1928, § 3136.

The Supreme Court of Arizona, in State Tax Commission v. Board of Supervisors, 43 Ariz. 156, 29 P.2d 733, 739, in construing said statute, stated: "This court has held, Yuma County v. Arizona & Swansea R. R. Co., supra [30 Ariz. 27, 243 P. 907], that under this section any taxpayer may test the validity of a tax upon any ground upon which he has not had an opportunity to be heard under other provisions of the law, and this would clearly include an increase in one's assessment made pursuant to an order of the tax commission at a time when it was not possible for him to have a hearing thereon. It is claimed, however, that because this section requires the payment of the tax before the taxpayer is permitted to test its validity, it deprives him of his property without a hearing and, therefore, does not constitute due process of law. It occurs to us that if the taxpayer has the right to recover in an action at law any portion of the tax he thinks has been illegally collected he is given a hearing thereon that satisfies due process."

The same question arose in the case of National Loan & Exchange Bank et al. v. Jones et al., 103 S.C. 80, 87 S.E. 482, 483, in which the court stated: "The statutes of this state provide an adequate remedy, i. e., a payment of the disputed tax under protest and a suit for recovery of the tax unlawfully paid. * * * An adequate remedy is provided for those who pay under protest, and the order of injunction and mandamus are overruled, and the judgments appealed from reversed."

A similar question arising under the laws of Tennessee was disposed of by the Supreme Court of the United States as follows in Shelton v. Platt, 139 U.S. 591, 11 S.Ct. 646, 648, 35 L.Ed. 273:

"Under that act, where an officer charged by law with the collection of revenue due the state takes any steps for the collection of the same, a party conceiving the tax to be unjust or illegal may pay it under protest, and sue the officer to recover the money back, and, if the court determines that it was wrongfully collected, then, upon its certificate to that effect, the comptroller 'shall issue his warrant for the ·same, which shall be paid in preference to other claims on the treasury.' And the act further provides that there shall be no other remedy in any case of the collection of revenue, and no writ for the prevention of such collection or to hinder and delay it shall in any wise issue, either injunction, supersedeas, prohibition, or any other writ or process whatever.

"This act has been sanctioned and applied by the courts of Tennessee. [Authorities]. It is, as counsel observe, similar to the act of congress forbidding suit for the purpose of restraining the assessment or collection of taxes under the internal revenue laws, in respect to which this court held that the remedy by suit to recover back the tax after payment, provided for by the statute, was exclusive. [Authority]. Legislation of this character has been called for by the embarrassments resulting from the improvident employment of the writ of injunction in arresting the collection of the public revenue; and, even in its absence, the strong arm of the court of chancery ought not to be interposed in that direction, except where resort to that court is grounded upon the settled principles which govern its jurisdiction."

The remedy by injunction was not open to appellant. The law gave him a remedy which he chose to ignore.

The judgment of the district court is affirmed.

It is so ordered.

HUDSPETH, C. J., and SADLER and BICKLEY, JJ., concur.

ZINN, J., did not participate.

On Rehearing.

BRICE, Justice.

The point upon which this case was decided originally was not raised by the appellees in this court. Appellant now urges that the statutory remedy is not adequate; and, for constitutional and other reasons hereafter stated, the remedy by injunction was open to him.

It is provided by the act, Laws 1935, c. 73, in substance (paragraphing ours):

(1) The taxes· are due and payable in monthly installments.

(2) The taxpayer is required to file with the Tax Commission his return on or before the 15th day of each month on business transacted the preceding month, and accompany the return with a remittance of the amount of tax due.

(3) If any taxpayer neglects or refuses to make a return, the Tax Commission shall make an estimate, based upon an examination of the taxpayer's books and records, or upon any information in its possession, of the amount of the gross receipts, etc., of the delinquent taxpayer, and upon such estimate assess the tax and a penalty equal to 50 per cent. thereof; with interest of 1 per cent. per month on tax and penalty, from the date the tax is due.

(4) If the taxpayer fails to file his return, accompanied by a remittance on the day the same is required to be filed, the taxpayer may be subject to a penalty of 1 per cent. of the tax for each day of such delay.

(5) The tax is due and payable by the taxpayer within five days after the service on the taxpayer of the notice of the assessment of the tax, which may be served in person or by mail.

(6) If the taxpayer remits less than the amount due, he shall pay the deficiency with interest at 1 per cent. a month from the time it is due until paid.

If the failure to pay any part of such deficiency is found by the Tax Commission to be due to the negligence of the taxpayer without the intent to evade the tax, 10 per cent. of the amount of the deficiency, together with 1 per cent. interest per month thereon, shall be added.

If the Tax Commission shall find that such failure to remit was due to intent to evade the tax, there shall be added to the tax 50 per cent. of the total amount of the deficiency, with interest at 1 per cent. per month.

(7) In case the Tax Commission is not satisfied with the return and payment of tax made by the taxpayer, it may make an additional assessment based upon the return, or other information it may have, and add thereto a penalty equal to 50 per cent. of the additional tax, together with interest on the additional tax and penalty at 1 per cent. per month.

(8) If any tax or portion thereof, or any interest or penalty, is not paid within thirty days after the same becomes due, the Tax Commission shall issue a warrant under its official seal, directed to the sheriff of any county of the state, commanding him to levy upon and sell the real and personal property of the taxpayer for the payment of the tax, penalty, interest, and costs due, together with additional penalty of 10 per cent. of the tax.

(9) The sheriff is required to within five days file a copy thereof with the county clerk, who shall record the same in his records; and thereupon the amount of the warrant so filed and entered shall become a lien upon all property, real and personal, excepting choses in action not due, of the person against whom it is issued.

(10) The sheriff is authorized to levy upon any of the property of the taxpayer, including negotiable instruments, and sell the same in the same manner prescribed by law for sales of property under executions issued upon judgments of a court of record.

(11) The Tax Commission is authorized, if it deems it necessary to insure compliance with the provisions of the act, to require any person subject to the tax to deposit with it security to guarantee the payment thereof, which security may be sold at public sale to enforce collection.

(12) If the taxpayer pays an amount in excess of that properly due by him, the excess is credited by the Tax Commission against any tax or installment thereafter due by the taxpayer under the provisions of the act.

(13) In addition to the summary remedies given the State Tax Commission for the collection of the tax, penalties, and interest which we have stated, the act provides that they shall become a personal debt due from the taxpayer to the state of New Mexico, and may be collected by suit in the district court.

(14) In addition to the penalties which we have set out, it is provided that any person required to make, render, sign, or verify any return or report, who makes any false or fraudulent return with the intent to defeat or evade the collection of the tax, etc., shall be deemed guilty of perjury, and shall be imprisoned in the state penitentiary for not more than five years or less than two years; and, in case of a corporation, be fined not more than $5,000.

Also, that any person who fails or refuses to make a return, or fails to furnish data required by the act, or violates any provision of the act for which no punishment is otherwise provided, shall be punished by a fine of not more than $500 or be imprisoned for not more than three months, or both.

The statutory remedies of the taxpayer are provided by sections 312 and 313 of the act, as follows:

"Section 312. If any taxpayer feels aggrieved by any action under this Act taken by the Tax Commission, he may apply to the Tax Commission by petition in writing, within thirty days, or such additional time as may be allowed by the Tax Commission, after the notice of such action is mailed to him, for a hearing and a correction of the action taken by the Tax Commission, in which petition he shall set forth the reasons why a hearing should be granted him and the amount in which any tax should be reduced. The Tax Commission shall promptly consider such petition, and may grant such hearing or deny the same. If denied, the petitioner shall be forthwith notified thereof personally or by mail. If granted, the Tax Commission may make such order in the matter as may appear to it just and lawful, and shall furnish a copy of such order to the petitioner.

"Section 313. No injunction or writ of mandamus, or other legal or equitable process, shall issue any suit, action or proceeding in any court of this state, or against any officer thereof, to prevent or enjoin the collection of any tax, penalty or interest under this act; but after payment of any such tax, penalty or interest under protest, which protest shall be duly verified by oath and shall set forth the grounds of objection to the legality of the tax, the taxpayer may

bring action against the Tax Commission in the District Court of Santa Fe County for the recovery of any tax, interest or penalty so paid under protest. No such action shall be instituted more than sixty days after such payment under protest is made, and failure to bring such suit within said sixty days shall constitute a waiver of said protest and of all claims against the State on account of any illegality in the tax so paid. No grounds of illegality of the tax shall be considered by the court other than those set forth in the protest filed at the time payment is made. Appeals from the final judgment of the District Court may be taken to the Supreme Court by either party in the same manner as appeals in civil cases are taken."

Appellees contend that section 313 of the statute (just quoted) deprives the district court of all jurisdiction to enjoin the collection of the tax or any proceedings authorized by the acts under discussion, and cite certain cases which will be reviewed.

Chamblee v. Tribble, 23 S.C. 70, seems to support appellees' contention. In it the Supreme Court of South Carolina stated: "Was there a fear that the citizen might be deprived of this mode of relief, if the hands of the legislature were not tied? Or was it done simply to confer jurisdiction on the courts in cases where the law, as it stood, when an application might be made for relief, authorized them to be issued? * * *

"Section 4 [of the Constitution] says, the Supreme Court * * * shall always have power to issue writs of injunction, mandamus, &c. Section 15 provides that the Court of Common Pleas * .* * shall have power to issue writs of mandamus, prohibition, &c. Not that these writs shall remain inviolate, as is said of the right of trial by jury—not that they shall never be suspended except in certain contingencies as is provided in reference to habeas corpus—but simply that the courts should have the power to issue them when, of course, it is proper and legal that they should be issued. * * * When we find, therefore, a sufficient reason for their prominence in the constitution in the fact of jurisdiction conferred, would it not be a strained construction to conclude that underlying this was a purpose to limit the legislative powers of the general assembly as to these writs in the exercise of that discretion which it is admitted that body possesses in general legislation, and which is so necessary not only in such legislation, but especially so in shaping and moulding remedies and proceedings, to be administered by the courts for the proper protection of the citizen in his various rights?"

That court held a similar act was constitutional; that it deprived the courts of their equity powers in such cases. But this is a very old case. The same question was later before the South Carolina court in National Loan & Exchange Bank et al. v. Jones et al., 103 S.C. 80, 87· S.E. 482, 483, in which that court said:

"The statutes of this state provide an adequate remedy, i. e., a payment of the disputed tax under protest and a suit for recovery of the tax unlawfully paid. The Constitution of this state gives the power to the courts to issue writs of injunction and mandamus, and the Legislature cannot take it away; but the Legislature can obviate the necessity for the issuance of these writs by providing an adequate remedy at law, as it has done in this matter of assessment and collection of taxes. * * *

"An adequate remedy is provided for those who pay under protest, and the order of injunction and mandamus are overruled, and the judgments appealed from reversed."

The same result followed as in the Chamblee Case, but upon the ground that the statute afforded a means of adequate relief.

Casco County v. Thurston County, 163 Wash. 666, 2 P.2d 677, 678, 77 A.L.R. 622, with annotation at page 629, is cited. An act of 1931 provided:

"Section 1. Injunctions and restraining orders shall not be issued or granted to restrain the collection of any tax or any part thereof, or the sale of any property for the non-payment of any tax or part thereof, except in the following cases:

"(1) Where the law under which the tax is imposed is void; and

"(2) Where the property upon which the tax is imposed is exempt from taxation." Laws Wash.1931, p. 201.

Section 2 of the act provides a remedy for the taxpayer in cases where they deem the tax unlawful or excessive, by its payment under written protest, and for the recovery of all or any portion so paid, if unlawful or excessive, in an action in the superior court against the collecting authority. The Washington court stated:

"We can see here no encroachment upon the constitutional power of the courts, but simply and solely a legislative attempt to provide an adequate legal remedy where, if a legal remedy before existed, it was a doubtful or inadequate one, so that the courts, while retaining to the full all of the equitable powers inherent in them, will find only lessened occasions for the use of such powers. We venture to say that many of what were originally equitable rights have by statutes been made legal rights; and, so far as we are aware, there is no judicial authority for holding that the statutory transformation of an equitable right into a legal right is an encroachment upon the equitable powers of the courts.

"The final answer to this question is therefore to be found in the answer to the third question, which is, Is the legal remedy afforded by the statute an adequate and sufficiently speedy one?"

The court then holds that the remedy provided by law was adequate and sufficiently speedy to satisfy the rule that equity will not interfere under such circumstances.

Appellees cite the following cases decided by the Oklahoma Supreme Court: First National Bank of Norman v. Briggs, 104 Okl. 97, 230 P. 860; Cotton v. Blake, 133 Okl. 60, 270 P. 1105; Weatherly v. Cloworth Development Co., 63 Okl. 307, 166 P. 156; Bradford v. Snell, 80 Okl. 56, 193 P. 982.

In the earlier case of Black et al. v. Geissler et al., 58 Okl. 335, 159 P. 1124, 1126, it was stated by the court:

"The procedure provided by this act furnishes plaintiff with a plain, adequate, and speedy remedy for the correction of any error in the assessment or equalization of his property and for the recovery of any taxes which may be illegally assessed against him, and where such a remedy exists equity will not interfere by injunction with the levy and collection of the revenues of the state government. * * *

"The Legislature may prescribe the form of remedy to be pursued in such cases, and may change the same, provided that the aggrieved taxpayer is left an effectual remedy or one is provided for him, which is all that is necessary, and when such remedy is provided same is exclusive. Tennessee ex rel. Bloomstein v. Sneed, supra [96 U.S. 69, 24 L.Ed. 610]; Shelton v. Platt, 139 U.S. 591, 11 S.Ct. 646, 35 L. Ed. 273."

This case seems to have been followed in the later cases cited by appellees. At any rate, the effect of these decisions is that there is a plain, adequate, and speedy remedy at law provided in behalf of the taxpayer, for which reason actions in equity are not available. We do not find any holding in these cases that, in the absence of such remedy, the taxpayer is deprived of those afforded by courts of equity.

Mayor & Council of City of Nashville v. Smith, 86 Tenn. 213, 6 S.W. 273, 275 is cited. The opinion of the court does not fully state the reasons for holding that an injunction should not issue in this case. The city claimed exemption from the taxes levied and the court so held, but stated: "The circuit judge dismissed the petition upon the ground that 'the state tax' had not been paid. That action was clearly correct, so far as the state's part ($600) of the sum sought to be collected is concerned; for, however unjust or illegal the demand against the city may have been, the only course left open to it was to pay the state's part of the same under protest, and then sue for the recovery thereof within 30 days thereafter. No writ of injunction, supersedeas, or prohibition or other process can lawfully issue for the prevention of the collection of revenue claimed to be due the state. Acts 1873, c. 44, carried into Code M. & V. at §§ 926, 928, 931, etc."

Evidently the court assumed that the statutes afforded an adequate remedy. It did not hold that, in the absence of such remedy, the statute barred relief by action in equity. The question was not in the case.

There are certain other cases from states which have statutes substantially like that of New Mexico, in which the courts have held that the taxpayer was deprived of equitable remedies, but base their conclusions in each instance upon the fact that a statute had provided an adequate remedy for the protection of the taxpayer. So far as we have been able to discover, no court, except in the early South Carolina cases, has ever held that the Legislature could deprive constitutional courts of their equity jurisdiction.

In Montana Ore Purchasing Co. v. Maher, 32 Mont. 480, 81 P. 13, 15, it is stated: "Sections 4024 and 4025, above provide for the payment under protest of taxes demanded, and for a suit at law to recover back the whole, or any part thereof, deemed by the taxpayer to be unlawful, and of this statutory remedy section 4026 says: 'The remedy thereby (hereby) provided shall supersede the remedy of injunction and all other remedies which might be invoked to prevent the collection of taxes or licenses alleged to be irregularly levied or demanded, except in unusual cases where the remedy hereby provided is deemed by the court to be inadequate.'" The Montana Supreme Court held the statutory remedy was plain, speedy and adequate.

The Constitution of Michigan, 1850, art. 6, § 8, contained a provision with reference to the jurisdiction of courts almost identical with ours. It provided, "they [the district courts] shall also have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, and other writs necessary to carry into effect their orders, judgments and decrees." A statute, Pub.Acts Mich.1885, No. 153, § 107, provided, "no injunction shall issue to stay proceedings for the assessment or collection of taxes under this act." The Michigan Supreme Court, in holding that the statute afforded an adequate remedy at law, said:

"If the first prayer be granted, and the tax be held illegal and void, the lien will be destroyed, and the cloud created thereby effectually removed. To accomplish this it is not necessary that an injunction should issue either before or after decree. This power of the court of chancery is not interfered with by the provision of the law inhibiting an injunction to restrain the collection of the tax. While it is not competent for the legislature to deprive circuit courts of their rightful jurisdiction and authority secured to or conferred upon them by the constitution, yet the article above quoted shows that the jurisdiction thus conferred is subject to legislative exceptions. People v. Hurst, 41 Mich. [328], 334, 1 N.W. 1027. I have no doubt that the legislature has the constitutional authority, where it has provided a plain, adequate, and complete remedy at law to recover back taxes illegally assessed and collected, to take away the remedy by injunction to restrain their collection. * * *

"The statute, while prohibiting the issue of the writ of injunction to restrain

the collection of the tax, has by section 42 of the tax law provided that the taxpayer 'may pay, under protest, to the township treasurer, specifying at the time, in writing signed by him, the grounds of such protest; and the treasurer shall minute the fact of such protest on the tax-roll, and in the receipt given. The person paying under such protest may, within thirty days, and not afterwards, sue the township for the amount paid, and recover, if the tax is shown to be illegal for the reasons specified in such protest.' It is not necessary for us in this case to decide whether such remedy specified by the statute is exclusive of all other common-law remedies. It is enough for our present purpose to know that the party paying the illegal exaction has a remedy at law for recovering it back." Eddy v. Township of Lee, 73 Mich. 123, 40 N.W. 792, 795.

A statute of South Dakota provided that there should be no other remedy in any case for the collection of taxes or to previous collection than that provided by statute, and that no injunction for the prevention of the collection, etc., shall in any wise issue. The court held that the statute afforded an adequate remedy, stating: "An action to recover a tax irregularly or wrongfully assessed and collected may be as speedily prosecuted to final judgment as may an injunction action, and the statute itself declares that any taxes wrongfully paid and which ought to be refunded in whole or in part shall be repaid in preference to other claims upon the county treasury. Respondent's suggestion that the remedy is not adequate for the reason that the statute does not in terms authorize a recovery of interest is without merit. It cannot be doubted that plaintiff would be entitled to interest upon any sum wrongfully collected by the county; nor can we agree with respondent's suggestion that the enforced collection of a tax, unlawful in whole or in part, may result in irreparable injury such as to entitle the plaintiff to a remedy by injunction." Zimmerman v. Corson County, 39 S.D. 167, 163 N.W. 711, 713.

A statute of North Carolina provides that no injunction shall issue to restrain collection of any tax. In construing the statute the Supreme Court of North Carolina said: "All these considerations tend in the direction of the statute, which expressly forbids the issue of an injunction to arrest the collection of taxes, and remits the party to the remedy which it points out, by a demand upon the state or county treasurer to refund, and, upon refusal, gives him an action against the county, city, or town to recover the taxes respectively received, and against the county for its own and the illegal taxes exacted by the state. As there are ample means of redress provided for remedying the wrong, the statute does not contravene the provisions of the federal or our own constitution, while it obviates the mischiefs resulting from an interference with the collector. The injury is not irreparable, for the payment of the small tax exonerates the property, and gives the tax-payer recourse to those into whose treasuries the

money has passed for refunding the money." Raleigh & G. R. Co. v. Lewis, 99 N.C. 62, 5 S.E. 82, 83.

This seems to be the intimation or holding of the courts in the following cases: Rogers v. Daniel Oil & Royalty Co., Tex.Civ.App., 105 S.W.2d 476; A. P. W. Paper Co., Inc. v. Riley, Collector of Revenue, D.C., 12 F.Supp. 738; Johnson v. Diefendorf, 56 Idaho 620, 57 P.2d 1068; Hanna v. Williams et al., 128 Okl. 134, 261 P. 923.

The Congress enacted in 1867, 26 U.S. C.A. § 154, now section 1543: "No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." In construing this statute the Supreme Court of the United States in Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 263, 76 L.Ed. 422, stated:

"Independently of, and in cases arising prior to, the enactment of the provision (Act of March 2, 1867, 14 Stat. 475) which became Rev.St. § 3224 (26 U.S.C.A., § 154) this court, in harmony with the rule generally followed in courts of equity, held that a suit will not lie to restrain the collection of a tax upon the sole ground of its illegality. The principal reason is that, as courts are without authority to apportion or equalize taxes or to make assessments, such suits would enable those liable for taxes in some amount to delay payment or possibly to escape their lawful burden, and so to interfere with and thwart the collection of revenues for the support of the government. And this court likewise recognizes the rule that, in cases where complainant shows that in addition to the illegality of an exaction in the guise of a tax there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector. Dows v. Chicago, 11 Wall. 108, 20 L.Ed. 65; Hannewinkle v. Georgetown, 15 Wall. 547, 21 L.Ed. 231; State Railroad Tax Cases, 92 U.S. 575, 614, 23 L.Ed. [663], 669, 673. Section 3224 is declaratory of the principle first mentioned and is to be construed as near as may be in harmony with it and the reasons upon which it rests. * * * The section does not refer specifically to the rule applicable to cases involving exceptional circumstances. The general words employed are not sufficient, and it would require specific language undoubtedly disclosing that purpose, to warrant the inference that Congress intended to abrogate that salutary and well established rule. * * * It has never held the rule to be absolute, but has repeatedly indicated that extraordinary and exceptional circumstances render its provisions inapplicable. * * *

"This is not a case in which the injunction is sought upon the mere ground of illegality because of error in the amount of the tax."

The court, after commenting upon the nature of the tax, stated further: "It is clear that, by reason of the special and

extraordinary facts and circumstances, section 3224 does not apply. The lower courts rightly held respondent entitled to the injunction." The effect of this decision is to hold that the federal statute is but declaratory of the rule of law promulgated in Dows v. Chicago 11 Wall. 108, 20 L.Ed. 65; State Railroad Tax Cases, 92 U.S. 575, 23 L.Ed. 663, 669, decided before its enactment, in which it was held in substance that equitable remedies were not available for defending against the collection of taxes merely because of their illegality; that there must be in addition special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence. The Supreme Court seems to assume that the Congress has the power to deprive litigants of the remedy by injunction. That seems to be the intimation of that court in Burrill, Treasurer, v. Locomobile Co., 258 U.S. 34, 42 S.Ct. 256, 257, 66 L.Ed. 450, in which it is stated: "The Constitution standing alone without more does not create a paramount unchangeable liability to an action of tort on the part of all persons who may take part in enforcing a state law that it invalidates. It leaves the remedies to Congress and the States. Congress acting under the Constitution has given to the courts of the United States a jurisdiction in equity that speaking broadly, is the same in all the States and follows its own rules."

A federal District Court holds that such statute, if purporting to deprive federal courts of all equity jurisdiction, irrespective of whether or not there be an adequate remedy at law, would violate the Constitution of the United States. A. 'P. W. Paper Co., Inc., v. Riley, D.C., 12 F.Supp. 738; see annotations in 108 A.L.R. beginning at page 184.

■ Section 13 of article 6 of the Constitution of New Mexico is: "The district court shall have original jurisdiction in all matters and causes not excepted in this constitution and such jurisdiction of special cases and proceedings as may be conferred by law, and appellate jurisdiction of all cases originating in inferior courts and tribunals in their respective districts, and supervisory control over the same. The district courts, or any judge thereof, shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, prohibition, and all other writs, remedial or otherwise in the exercise of their jurisdiction."

The Legislature is inhibited by this section of the Constitution from depriving the district courts of the power to issue writs of injunction according to the practice in courts of equity in any case unless it provides an adequate remedy at law as a substitute; in which case such writs should ordinarily not be issued in the absence of such statute.

■ While the Legislature cannot deprive the district court of its power to issue injunctions in proper cases, a litigant has no vested right in such remedy; and its use may be limited by the Legislature, if litigants are supplied with means of

redress by some effective procedure, ordinarily held to be a plain, speedy, and adequate remedy at law. Gibbes v. Zimmerman, 290 U.S. 326, 329, 54 S.Ct. 140, 78 L.Ed. 342; National Loan & Exchange Bank et al. v. Jones et al., 103 S.C. 80, 87 S.E. 482; Eddy v. Township of Lee, 73 Mich. 123, 40 N.W. 792; Raleigh & G. R. Co. v. Lewis, 99 N.C. 62, 5 S.E. 82.

■ Courts are loath to interfere with the collection of taxes by injunction; and the use of the means provided by law for the securing and collection of taxes will not be enjoined merely because the tax is, or was alleged to be, void; but, in addition thereto, there must be exceptional and extraordinary circumstances with respect to the operation of the act, which will bring the case within some acknowledged head of equity jurisprudence. This is the effect of the decisions of the Supreme Court of the United States. Miller v. Standard Nut Margarine Co., supra.

"We do not propose to lay down in these cases any absolute limitation of the powers of a court of equity in restraining the collection of illegal taxes; but we may say, that, in addition to illegality, hardship, or irregularity, the case must be brought within some of the recognized foundations of equitable jurisdiction, and that mere errors or excess in valuation, or hardship or injustice of the law, or any grievance which can be remedied by a suit at law, either before or after payment of taxes, will not justify a court of equity to interpose by injunction to stay collection of a tax. One of the reasons why a court should not thus interfere, as it would in any transaction between individuals, is, that it has no power to apportion the tax or to make a new assessment, or to direct another to be made by the proper officers of the State." State Railroad Tax Cases, 92 U.S. 575, 614, 23 L.Ed. 663.

The question then is whether, aside from the alleged invalidity of the tax, its hardship, injustice, etc., there are any special and extraordinary circumstances shown to exist which under the rules we have stated authorize the interposition of a court of equity.

■ While any infraction of the law may result in penalties, fines, and imprisonment, and a failure to pay the tax will result in summary proceedings against appellant's property by which his title will be clouded, yet this can be avoided by payment of the taxes under protest. Section 313, supra, provides for the recovery of any tax, penalty, or interest paid under protest, by suit in the district court of Santa Fé county, but such suit must be brought within sixty days after such payment, and, if not brought within sixty days, the right to recover the money paid is waived. The statute provides for judgment against the State Tax Commission for any illegal tax, with interest, and creates a fund out of which any judgment shall be paid. Such laws are held to be constitutional and ordinarily afford an adequate remedy at law. Shelton v. Platt, 139 U.S. 591, 11 S.Ct. 646, 35 L.Ed. 273. The defect in this law is, that the tax must

be paid once each thirty days, and the failure to pay subjects the taxpayer to severe penalties, fines, and imprisonment, which cannot be avoided except by payment of the tax under protest. But, when so paid, a suit must be filed each sixty days to recover payments made, until the final determination in this court, or the collection of the tax is waived. From the record it appears this suit was filed more than two years ago; and, to protect appellant against fines and imprisonment during the pendency of the suit, he must have filed not less than twelve suits, each for the same purpose. The Legislature might easily have provided for the payment of subsequent assessments under protest, to be held until the determination of a suit to test the legality of the tax, or any portion of it; or otherwise have protected taxpayers against a multiplicity of suits, but the law was apparently intended to discourage any contest.

We do not believe that any litigant should be required, even in tax cases, to file a dozen or more suits to protect a single right. The principle is stated in the recent suits of Hill v. Wallace, 259 U.S. 44, 42 S. Ct. 453, 66 L.Ed. 822; Wilson v. Illinois So. R. Co., 263 U.S. 574, 44 S.Ct. 203, 68 L.Ed. 456. See annotations in 76 L.Ed. pp. 455 et seq.

■ The distinction is made in Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 221, 76 L.Ed. 447, in holding an injunction should not have issued. It was stated: "In general, the jurisdiction of equity to avoid multiplicity of suits at law is restricted to cases where there would otherwise be some necessity for the maintenance of numerous suits between the same parties, involving the same issues of law or fact. It does not extend to cases where there are numerous parties plaintiff or defendant, and the issues between them and the adverse party are not necessarily identical."

■ Here appellant must maintain innumerable suits against the identical parties to accomplish one purpose; that is, to determine the constitutionality of the act, or certain parts of it.

We hold that there are special and extraordinary circumstances in this case which authorized appellant to resort to a court of equity for relief.

■ Section 309, of which appellant complains, does not provide that the tax shall be "estimated," but that the Tax Commission shall make an estimate based upon an examination of the taxpayer's books and records or upon any information in its possession or that may come into its possession, of the amount of gross receipts, etc., and "upon the basis of said estimated amount shall compute and assess the tax payable by the delinquent taxpayer." The word "estimate" is used here in the sense of "ascertain," Roddy v. McGetrick, 49 Ala. 159; or "compute," Tully v. Feltman, 177 Pa. 344, 36 A. 285; People v. Clark, 37 Hun, N.Y., 201.

■ But the statute levies the tax. The function of the Tax Commission is to determine the amount, assess and collect it. Section 201 of the act in question.

The statute itself shows that there must be evidence before the commission (the taxpayer's books and records or other information) upon which to base the amount of gross earnings.

But as the statute levies the tax the appellant was due the amount fixed by the statute. If in attempting to assess and collect this tax the State Tax Commission has overcharged the appellant, he would have some complaint. But he does not claim that he does not owe the state of New Mexico the amount of tax, interest, and penalties charged against him if the act is constitutional. His charge is that for constitutional reasons he is not indebted in any amount. He cannot complain even at an estimated tax if in fact he owes it. The effect of this section of the act is that the Tax Commission shall determine from the evidence obtainable the amount of the gross receipts of the taxpayer, from which to compute the amount of tax to be collected.

If the tax was authorized at all, as we shall determine hereafter, then appellant's contention is without merit. The question is not how the Tax Commission arrived at the amount of the tax assessed, but whether the amount is correct.

The district court concluded as a matter of law: "That the classifications for the purpose of levying a tax by the New Mexico Bureau of Revenue are equal and uniform, and in no way discriminate against the plaintiff, and violate no constitutional right of the plaintiff;"

Appellant assigns the following error: "That the court erred in rendering judgment for the reason that the second conclusion of law, as to classification for the purpose of making tax levies, is contrary to law."

It is then stated in the brief in substance that an examination of the classifications shows them to be arbitrary and discriminatory, "which makes the whole of the act unconstitutional."

No specific provision of the act is pointed out in the brief that discriminates in any particular, either against appellant or anyone else; nor is any provision of the Constitution referred to as being infringed by the act. The argument is stated in the following words, copied from appellant's brief: "Appellant submits to this court that a classification of a lawyer's income to be made subject to collect a tax upon his services, if his receipts are called a fee or a retainer, but excluded if such service receipts are called wages or salary, is an arbitrary and discriminating classification, and even more so because of the law itself."

The act provides for a tax against persons engaged in certain businesses and professional work, under various classifications, and at different rates. Appellant's classification appears under subsection (H) of section 201 of article 2; and is: "H. At an amount equal to two per cent of the gross receipts of any person engaging or continuing in the practice of any profession, or of any business in which the service rendered

is of a professional, technical or scientific nature and is paid for on a fee basis, or by a consideration in the nature of a retainer."

Wage earners and salaried employees are exempt under subsection (d) of section 212 of the act, which is: "There are exempted from the taxes imposed by this act the following: * * * (d) Income received in the form of ordinary wages or salaries."

In the exercise of the power of taxation the state is free to select its subjects, and also to grant exemptions. There is no rule under any provision of the Constitution of the state or national government that requires a precise equality in taxation. Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 873, 81 L.Ed. 1245, 109 A.L.R. 1327.

■ If the Legislature had so desired, it could have selected appellant's classification alone to be taxed, if reasonable and not arbitrary; the effect of which would have been to exempt all other classes without naming them. The only possible relation that could exist between the classification under which appellant comes and that of wage earners and salaried employees is that in a few instances attorneys and other professional men are paid salaries for professional work. But there was no intention on the part of the Legislature to exempt such professional men or women as a class. They are included in a larger class of people, principally laborers, who ordinarily are not business people. It is impossible that there should not be some inequality; and by singling out a particular class, as an attorney who receives a salary, from the large class of wage earners and salaried employees, some inequality may be shown; but this does not infringe upon appellant's constitutional rights. It is not just the salaried attorney or other professional person that is exempt; but all persons included under the classification of wage earners and salaried employees. The question in Carmichael v. Southern Coal & Coke Co., supra, was whether the Unemployment Compensation Act of Alabama infringes the due process and equal protection clauses of the Federal Constitution. In holding that it did not, certain principles of the law of taxation were stated that apply here. We quote as follows from the opinion:

"It is argued here, and it was ruled by the court below, that there can be no reason for a distinction, for purposes of taxation, between those who have only seven employees and those who have eight. Yet, this is the type of distinction which the law is often called upon to make. It is only a difference in numbers which marks the moment when day ends and night begins, when the disabilities of infancy terminate and the status of legal competency is assumed. It separates large incomes which are taxed from the smaller ones which are exempt, as it marks here the difference between the proprietors of larger businesses who are taxed and the proprietors of smaller businesses who are not. * * *

"It is arbitrary, appellees contend, to exempt those who employ agricultural la-

borers, domestic servants, seamen, insurance agents, or close relatives, or to exclude charitable institutions, interstate railways, or the government of the United States or of any state or political subdivision. A sufficient answer is an appeal to the principal of taxation already stated, that the state is free to select a particular class as a subject for taxation. The character of the exemption suggests simply that the state has chosen, as the subject of its tax, those who employ labor in the processes of industrial production and distribution.

"Reasons for the selections, if desired, readily suggest themselves. Where the public interest is served one business may be left untaxed and another taxed, in order to promote the one. * * * The legislature may withhold the burden of the tax in order to foster what it conceives to be a beneficent enterprise. This Court has often sustained the exemption of charitable institutions, * * * and exemption for the encouragement of agriculture. * * * Similarly, the legislature is free to aid a depressed industry such as shipping. The exemption of business operating for less than twenty weeks in the year may rest upon similar reasons, or upon the desire to encourage seasonal or unstable industries.

"Administrative considerations may explain several exemptions. Relatively great expense and inconvenience of collection may justify the exemption from taxation of domestic employers, farmers, and family businesses, not likely to maintain adequate employment records, which are an important aid in the collection and verification of the tax.

The classification is reasonable, and appellant is not denied due process of law or the equal protection of the law, or any constitutional right.

The fact that lawyers are officers of the court, and that the profession of law is not "a money getting business," as suggested by appellant, is no good reason why they should be exempt from taxation. If a lawyer "gets" no money, he pays no tax.

The decree of the district court is affirmed.

It is so ordered.

HUDSPETH, C. J., and SADLER and BICKLEY, JJ., concur.

ZINN, J., did not participate.