**H. D. HORN, a general partner of the limited partnership of Nugent-Horn-Morris, Plaintiff,**

**v.**

**Fred O'CHESKEY, Commissioner of Revenue, State of New Mexico, et al., Defendants.**

**No. 74-326 Civil.**

United States District Court, D. New Mexico.

July 16, 1974.

Crouch, Parr & Herring (J. R. Crouch), Las Cruces, N. M., for plaintiff.

Jan E. Unna, Bureau of Revenue, Santa Fe, N. M., for defendants.

## MEMORANDUM OPINION

BRATTON, District Judge.

This action contests the constitutionality of § 72–13–72 N.M.S.A. (1973 Supp.) of the Tax Administration Act authorizing "jeopardy assessments" and an administrative procedure for their collection. The complaint requests damages and a temporary restraining order enjoining the enforcement of § 72–13–72 and enjoining the defendants, Fred

O'Cheskey, Commissioner of Revenue of the State of New Mexico, and his agents from proceeding thereunder and levying upon plaintiff's property. Jurisdiction has been asserted under 28 U.S.C.A. §§ 1331, 1332, and 1343(3). Upon the inquiry of the Court during the hearing on the motion, plaintiff requested the convening of a three-judge court pursuant to the statutory procedure outlined in 28 U.S.C.A. §§ 2281 and 2284.

Plaintiff H. D. Horn, a Texas resident, and a general partner of the limited partnership of Nugent-Horn-Morris (hereinafter NHM), a Texas partnership, holds an interest in an apartment complex known as Villa Sierra Apartments in Las Cruces, New Mexico. NHM, the owner of the complex, has executed a mortgage agreement with the Federal Housing Administration, Department of Housing and Urban Development, whereby the partnership encumbered the property and assigned all rents to the FHA. This agreement was duly recorded in the office of the County Clerk, Dona Ana County, on October 29, 1973. Thereafter on June 14, 1974, the Bureau of Revenue notified the plaintiff that a jeopardy tax assessment [1] had been placed on the property and on June 24, agents of the Bureau served warrants of levy upon approximately 75 tenants of the apartment complex, ordering them to pay all rents due or to become due to the Bureau of Revenue. The Bureau subsequently recorded a tax lien on the property on June 25.

Horn concentrates his constitutional attack upon the statute's provisions establishing the procedure which a taxpayer must follow to contest his tax liability.[2] Specifically he challenges its provisions requiring a disaffected taxpayer to either pay the amount demanded or post adequate security therefor within 5 days of the notice of jeopardy assessment as a prerequisite to his ability to debate his liability through the administrative hearing procedures specified in §§ 72–13–38 to 72–13–40 N.M.S. A. (1973 Supp.). Plaintiff contends that this procedure deprives him of his prop-

---

1. A jeopardy assessment is levied when the commissioner believes that the collection of a certain tax liability will be jeopardized by delay. See § 72–13–72, subd. A, N.M.S.A. (1973 Supp.)

2. § 72–13–72. Jeopardy assessments.—A. If the commissioner at any time reasonably believes that the collection of any tax for which a taxpayer is liable will be jeopardized by delay, he may immediately make a jeopardy assessment of the amount of tax the payment of which to the state he believes to be in jeopardy.

B. A jeopardy assessment is effective upon the delivery, in person or by certified mail, to the taxpayer against whom the liability for tax is asserted, of a document entitled "Notice of Jeopardy Assessment of Taxes," issued in the name of the commissioner, stating the nature and amount of the taxes assertedly owed by him to the state, demanding of him the immediate payment thereof and briefly informing the taxpayer of the steps that may be taken against him as well as of the remedies available to him.

C. Notwithstanding any other provision of the Tax Administration Act [72–13–13 to 72–13–92], if any person against whom a jeopardy assessment has been made neglects or refuses either to pay the amount of tax demanded of him or furnish satisfactory security therefor within five [5] days of the service upon him of the notice of jeopardy assessment, the commissioner may (1) immediately proceed to collect the tax by levy, as provided in section 33 [72–13–45] of the Tax Administration Act, on sufficient property of the taxpayer to satisfy the deficiency, or he may (2) protect the interests of the state by, as provided in section 55 [72–13–67] of the Tax Administration Act, enjoining the taxpayer from doing business in New Mexico, or both.

D. A taxpayer to whom a jeopardy assessment has been made may cause the procedure of levy or injunction as set forth in the preceding paragraph to be stayed by filing with the bureau acceptable security in an amount equal to the amount of taxes assessed, as provided in sections 33 and 55 [72–13–45, 72–13–67] of the Tax Administration Act. A taxpayer to whom a jeopardy assessment has been made may dispute the jeopardy assessment by furnishing security and otherwise following the procedures set forth in section 26 [72–13–38] of the Tax Administration Act or he may pay the tax and claim a refund thereof as provided by section 28 [72–13–40] of the Tax Administration Act.

erty without due process of law since it requires him to either pay the tax or post security therefor prior to any hearing to determine the validity of his challenges, in contravention of the doctrine enunciated in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed. 2d 556 (1972), and most recently in Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). Petitioner argues that the procedure to which he is relegated is exceptionally onerous on the facts of this case where the contested tax liability exceeds $100,000.

■■ In any case in which a request has been made for the convocation of a three-judge court, the district judge to whom the petition has been addressed, possesses the authority to initially examine the jurisdictional bases of the complaint and its substantiality on the merits, without first convening a judicial triumvirate. Ex Parte Poresky, 290 U. S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Long v. District of Columbia, 152 U.S. App.D.C. 187, 469 F.2d 927 (1972); Puglia v. Cotter, 333 F.Supp. 940 (D.Conn.1971). The single district judge is also empowered to dismiss the complaint if, after a review of the case, he determines that jurisdiction does not exist or that the complaint fails to state a substantial constitutional claim. *Ex Parte Poresky, Long*, and *Puglia, supra*. This fact is so despite the seemingly contradictory mandate of 28 U.S.C.A. § 2284(5) which precludes dismissal of a complaint by a single judge, since that statute governs procedure only after a three-judge court has initially been convened. See Jacobs v. Tawes, 250 F.2d 611 (4th Cir. 1957); Lion Manufacturing Corporation v. Kennedy, 117 U.S.App.D.C. 367, 330 F.2d 833 (1964). Review of such a determination lies in the appropriate Court of Appeals. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962).

■ However, dismissal of the complaint by a single judge upon jurisdictional grounds will be proper only where the jurisdictional bases asserted are insubstantial. See Jacobs v. Tawes, *supra*; Maryland Citizens For a Representative General Assembly v. Governor of Maryland, 429 F.2d 606 (4th Cir. 1970); Cherry v. Postmaster General, 272 F.Supp. 982 (D.Puerto Rico 1967). Such a conclusion follows since the parallel determination that a complaint fails to state a substantial constitutional question, although a determination on the merits, is essentially a statement that subject matter jurisdiction does not exist. See *Ex Parte Poresky, supra*.

The defendants urge the Court to dismiss the action, relying upon the explicit proviso of 28 U.S.C.A. § 1341 which reads:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

Defendants contend that the relief demanded by the plaintiff would precipitate a head-on collision with this statutory directive since the levy and collection procedures outlined in § 72–13–72 would be effectively forestalled and a fortiori, the State Treasury deprived of expected revenues. After an analysis of the cases involving § 1341 and the unequivocal language of the statute itself, the Court is convinced that the statute means exactly what it says and mandates a denial of the equitable relief requested for want of jurisdiction in the court.

The evolution of the doctrine of judicial noninterference with the administration of a state's fiscal operations preceded its codification in § 1341. The philosophical undercurrents of the principle are grounded in a recognition of a fundamental truth that the effective operation of the state government, indeed any government, depends directly upon the presence of sufficient revenues to

fund governmental programs. The continuity of state governmental initiatives is often delicately linked to the assurance that the necessary revenues will be available at a precise moment. Also underlying the doctrine is the recognition that a state's taxing scheme often involves highly complex administrative procedures intertwined in the linguistic peculiarities of state statutes quite familiar to the state administrators who constantly apply them, but similarly foreign to federal courts who apply them on an intermittent ad hoc basis. See Perez v. Ledesma, 401 U.S. 82, 126–129, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) (Brennan, J., concurring in part and dissenting in part.) It does not require clairvoyance to foresee the problems that would most certainly arise from repeated federal intervention in the state's fiscal operations.

Five years prior to the enactment of § 1341, the Supreme Court graphically explained the rationale for the reluctance of federal courts to employ their equitable powers in a state tax dispute, observing in the case of Matthews v. Rodgers, 284 U.S. 521, 525–526, 52 S.Ct. 217, 219, 76 L.Ed. 447 (1932):

> "The reason for this guiding principle is of peculiar force in cases where the suit, like the present one, is brought to enjoin the collection of a state tax in courts of a different, though paramount, sovereignty. The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied *in every case where the asserted federal right may be preserved without it*. Whenever the question has been presented, this Court has uniformly held that the mere illegality or unconstitutionality of a state or municipal tax is not in itself a ground for equitable relief in the courts of the United States. If the remedy at law is plain, adequate, and complete, the aggrieved party is left to that

remedy in the state courts, from which the cause may be brought to this Court for review if any federal question be involved \* \* \*" (Emphasis added)

See also Great Lakes v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943).

The determinative question to be resolved in any case where federal equitable intervention is sought in a state tax dispute and the key to the interpretation of § 1341 is whether a "plain, speedy, and efficient" remedy exists in the courts of the state. See Ford Motor Credit Company v. Louisiana Tax Commission, 440 F.2d 675 (5th Cir. 1971); Great Lakes Co. v. Huffman, *supra*. The fact that the complaint raises federal constitutional questions concerning the challenged state statute is of no significance in making a jurisdictional determination under § 1341. The state courts have concurrent jurisdiction of claims involving federal constitutional rights and § 1341 requires that one protesting the constitutionality of a state tax statute assert his federal rights in the state forum. The Tenth Circuit set forth the applicable law in the case of Baker v. Atchison, T. & S.F. Ry. Co., 106 F.2d 525, 529–530 (1939) by stating:

> "But another principle of equity is equally well founded and has peculiar application in a case of this kind. It is that the federal courts should exercise an appropriate reluctance to interfere by injunction with the fiscal affairs of a state, and it is accepted practice to relinquish their jurisdiction in favor of the state courts in respect of such matters, if the federal rights of the complainant can be there preserved without impairment. (Citation omitted). True, plaintiff charges a violation of rights guaranteed to it by the due process and equal protection clauses of the Fourteenth Amendment. But state courts bear equal responsibility with federal courts to guard and protect rights secured by

the Constitution of the United States. (Citation omitted). And there is no basis here for the conclusion that the state courts in Colorado will fail in the discharge of their obligation to protect unimpaired every right of plaintiff which is guaranteed to it by the due process and equal protection clauses."

 Moreover, the fact that the complaint alleges a claim under the Civil Rights Act, 42 U.S.C.A. § 1983, and its jurisdictional counterpart, 28 U.S.C.A. § 1343(3), does not modify the preceding analysis. The Court recognizes the well established general rule that a plaintiff need not exhaust state remedies under § 1983 before presenting his claim in the federal courts. However, this general doctrine must yield here to the explicit command of a specific statute expressing a paramount federal policy of non-intervention in state tax controversies. No evidence of such an exception has been presented and the statute itself, silent on its face as to any exception, permits no basis whatsoever for such an inference.

The court in Lung v. O'Cheskey, 358 F.Supp. 928 (D.N.M.1973), and other courts that have encountered the question have unhesitatingly rejected this contention. The Second Circuit, to whom the question was squarely presented, unequivocally rejected a claim for a § 1983 exception to § 1341, in American Commuters Association v. Levitt, 405 F.2d 1148, 1151 (1969) declaring:

" * * * considering the special attention courts have always shown to tax matters even when constitutional rights are involved (citation omitted), plus the unequivocal congressional statement set forth in § 1341, we conclude that when there are adequate state remedies available, § 1341 means what it so plainly says and that federal jurisdiction is still precluded by it."

Similar resolutions of the question were also reached in Bland v. McHann, 463 F.2d 21 (5th Cir. 1972); Hickmann v. Wujick, 488 F.2d 875 (2nd Cir. 1973); and Mandel v. Hutchinson, 494 F.2d 364 (9th Cir. 1974).

If any lingering vestiges of doubt could possibly remain depite the aforementioned cases, they are clearly dispelled by footnote 6 of the court's recent opinion in Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L. Ed.2d 424 (1972). Commenting on the reasons for its affirmances of two cases where the district courts had dismissed constitutional claims under 28 U.S.C.A. § 1343(3) for want of jurisdiction on the ground that proprietary rights were not countenanced within the civil rights laws, the court noted, at 542–543, 92 S. Ct. at 1117:

"All of these cases involved constitutional challenges to the collection of state taxes. Congress has treated judicial interference with the enforcement of state tax laws as a subject governed by unique considerations and has restricted federal jurisdiction accordingly: (Proceeding to quote § 1341).

"We have repeatedly barred anticipatory federal adjudication of the validity of state tax laws. (Citation omitted). The decisions cited by appellees may, therefore, be seen as consistent with congressional restriction of federal jurisdiction in this special class of cases, and with longstanding judicial policy."

 Having determined that § 1341 applies to this case and that the complaint must be dismissed if an adequate state remedy exists, the court must ascertain whether the remedies available to plaintiff under New Mexico law are in fact, plain, speedy, and efficient. The remedies provided under the state law are indeed adequate.

The merits of this suit challenge the constitutionality of § 72–13–72 upon the grounds that it authorizes a taking of property without due process of law by requiring a taxpayer to either pay the disputed tax or post adequate security therefor prior to any opportunity for

a hearing to contest the validity of the tax. Although the court may not at this stage decide the merits of this controversy since to do so would invade the province of a three-judge court (absent a demonstration of the insubstantiality of the claim), the court still must scrutinize the remedies the statute provides, as well as all other available remedies, in accordance with its threshold duty to determine its jurisdiction under § 1341, i. e., the court must determine if the available state remedies are "plain, speedy, and efficient." Plaintiff challenges not the constitutionality of the tax levied, but the methodology by which it is collected. He asserts that if his only state remedy is payment under protest, he will suffer irreparable harm in the interim, being deprived of the funds necessary to satisfy his FHA mortgage [3] and subjecting his property to the likelihood of foreclosure.

Despite plaintiff's apprehensions, an examination of the relevant state law reveals that broader remedies are afforded him than those listed on the face of the challenged statute. Traditional equity jurisdiction in the state courts will be available to him if necessary to preclude irreparable harm. In the case of Lougee v. New Mexico Bureau of Revenue Commissioner, 42 N.M. 115, 76 P.2d 6 (1938), plaintiff, an attorney, sought to enjoin the Bureau from collecting a privilege tax levied upon his practice on the basis that it was constitutionally void. However, specific statutory provisions existed which expressly barred the use of injunctive relief by a taxpayer to restrain the collection of any taxes imposed under the act in question. Instead, the law provided that the taxpayer must pay the tax under protest and thereafter institute suit for a refund. The New Mexico Supreme Court, although denying petitioner relief on the merits, held that Art. VI, § 13 of the

State Constitution, forbade the legislature from depriving the state courts of their general equity jurisdiction unless it simultaneously supplied litigants with a plain, speedy, and adequate remedy at law. The opinion of the court makes manifest the principle that the state courts may entertain injunctive suits against the collection of state taxes if extraordinary circumstances bring the grievant within some acknowledged foundation of equity jurisprudence.

The court expounded, at 42 N.M. 131, 76 P.2d 16:

"Courts are loath to interfere with the collection of taxes by injunction; and the use of the means provided by law for the securing and collection of taxes will not be enjoined merely because the tax is, or was alleged to be, void; but, in addition thereto, there must be exceptional and extraordinary circumstances with respect to the operation of the act, which will bring the case within some acknowledged head of equity jurisprudence * * *.

\* \* \* \* \* \*

"The question then is whether, aside from the alleged invalidity of the tax, its hardship, injustice, etc., there are any special and extraordinary circumstances shown to exist which under the rules we have stated authorize the interposition of a court of equity."

Thus, the court's opinion demonstrates the availability of equitable relief to this plaintiff upon the requisite showing of extraordinary circumstances which would warrant its use. The existence of this remedy alone irrefutably demonstrates that the state remedies open to plaintiff are plain, speedy, and efficient and deprives the court of jurisdiction under § 1341. For a similar conclusion in a § 1341 case, see the opinion in Whitmore v. Bureau of Revenue of State of New Mexico, 64 F.Supp. 911 (D.N.M. 1946).

3. In determining whether the court lacks jurisdiction under § 1341, it should be noted that this is not an action by the United States nor one which the United States could have maintained. Cf. Moses v. Kinnear, 490 F.2d 21 (9th Cir. 1973).

Yet another remedy available to the plaintiff is a state court action brought under 42 U.S.C.A. § 1983. Undeniably, the state courts have concurrent jurisdiction of § 1983 actions. *Long v. District of Columbia,* 152 U.S.App. D.C. 187, 469 F.2d 927 (1972). The courts of New Mexico fully respect this principle and will entertain claims predicated upon the denial of a federal right under § 1983 when presented. See *Gomez v. Board of Ed. of Dulce Ind. Sch. Dist. No. 21,* 85 N.M. 708, 516 P.2d 679 (1973). That case demonstrates that the state courts will unhesitatingly apply the federal statute and give due consideration to plaintiff's constitutional claims against the New Mexico tax statute in question here. Here, also, plaintiff will have the benefit of anticipatory equitable relief under § 21–1–1 (Rules 65 and 66) N.M.S.A. (1953 Comp.) of the Rules of Civil Procedure. There can be no basis for any allegation that the state courts will neglect to implement plaintiff's constitutional rights.

If it be contended by plaintiff that the remedies provided him in the state courts are not the equal of those which he could receive here, it should be noted that neither the decisional law nor § 1341 requires that the available state remedies be the equal of any possible federal remedies. All that is required by § 1341 is that the state remedy be "plain, speedy, and efficient." See *Bland v. McHann, supra,* 463 F.2d at 29.

Having scrutinized the relevant state remedies available to plaintiff, the court is convinced of their adequacy. Indeed they offer the plaintiff virtually the same alternatives that would be available to him here in the absence of § 1341. Therefore, in light of the statutory mandate of § 1341 and the long recognized principles which underlie it, the court concludes that it has no jurisdiction of the claim for equitable relief against the challenged statute and the motions for a temporary restraining order and the convocation of a three-judge panel will therefore be denied.